IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 22-1499

LINDA MIGLIORI, et al.,

*Plaintiffs-Appellants*,

v.

LEHIGH COUNTY BOARD OF ELECTIONS, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 5:22-cv-00397
Honorable Joseph F. Leeson, Jr.

**AMICUS BRIEF OF THE COMMONWEALTH OF PENNSYLVANIA IN
SUPPORT OF APPELLANTS AND REVERSAL**

<div style="margin-left:40%">

JOSH SHAPIRO
Attorney General
Commonwealth of Pennsylvania

MICHAEL J. FISCHER
Chief Counsel and Executive Deputy
Attorney General
JACOB B. BOYER
Deputy Attorney General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(267) 768-3968
jboyer@attorneygeneral.gov

</div>

April 1, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF INTEREST ............................................................ 1

BACKGROUND ............................................................................... 2

SUMMARY OF ARGUMENT ............................................................ 7

ARGUMENT .................................................................................... 8

    I.  Disqualifying Undated Ballots Infringes Voters' Rights Under
       § 10101(a)(2)(B) ...................................................................... 8

      A. The Date on a Ballot Return Envelope Is Not Material to
          Determining Voters' Qualifications under Pennsylvania Law ......... 9

      B. Section 10101(a)(2)(B) Applies to Errors on Ballot
          Envelopes ......................................................................... 16

    II. Voters Can Bring Suit to Enforce § 10101(a)(2)(B)'s
       Protections ............................................................................ 19

CONCLUSION ................................................................................. 26

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval*, 532 U.S. 275 (2001)................................. 8, 19, 21

*Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008)................................19

*Bilski v. Kappos*, 561 U.S. 593 (2010)....................................................19

*Common Cause v. Thomsen*, No. 19-323, 2021 WL 5833971 (W.D. Wis. Dec. 9, 2021) ...............................................................17

*Duncan v. Walker*, 533 U.S. 167 (2001)..................................................17

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ........................................................................... 9, 10

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004) ...................18

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ......................... 8, 19, 20, 21

*Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520 (3d Cir. 2009)........................................................................20

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa. 2020) .......................................... *passim*

*In re Election in Region 4 for Downingtown Sch. Bd. Precinct Uwchlan 1*, No. 1381 CD 2021, 2022 WL 96156 (Pa. Commw. Ct. Jan. 10, 2022)...............................................................................6

*League of Women Voters of Arkansas v. Thurston*, No. 20-5174, 2021 WL 5312640 (W.D. Ark. Nov. 15, 2021)..........................................18

*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018)......... 10, 18

*McGovern v. City of Philadelphia*, 554 F.3d 114 (3d Cir. 2009)...........21

*Mixon v. Commonwealth*, 759 A.2d 442 (Pa. Commw. Ct. 2000) ...........2

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020) ...............13

Ritter v. Lehigh Cnty. Bd. of Elections, No. 1322 CD 2021, 2022 WL 16577 (Pa. Commw. Ct. Jan. 3, 2022) ..................................................... 6, 10, 11

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ................................. 20, 22, 24, 25

*Schwier v. Cox*, 412 F. Supp. 2d 1266 (N.D. Ga. 2005)........................................10

*Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264 (W.D. Wash. 2006) ...............................................................................................................10

## Constitutions

Pa. Const. art. VII, § 1...............................................................................................2

Pa. Const. art. VII, § 14.............................................................................................2

U.S. Const. amend. XXVI .........................................................................................2

## Statutes and Legislation

1 Pa.C.S. § 1922........................................................................................................1

25 P.S. § 2811 ..................................................................................................... 2, 13

25 P.S. § 3050 ...........................................................................................................3

25 P.S. § 3146.1 ........................................................................................................2

25 P.S. § 3146.2 ........................................................................................................2

25 P.S. § 3146.2b ......................................................................................................3

25 P.S. § 3146.6 ................................................................................................ 3, 4, 7

25 P.S. § 3146.8 ................................................................................................ 7, 13

25 P.S. § 3150.12 ......................................................................................................2

25 P.S. § 3150.12b ....................................................................................................3

25 P.S. § 3150.16 .............................................................................................. 3, 4, 7

25 Pa.C.S. § 1301 ............................................................................................ 2, 7, 13

25 Pa.C.S. § 1328 ......................................................................................................2

25 Pa.C.S. § 1501 ........................................................................14

25 Pa.C.S. § 1902 ........................................................................14

28 U.S.C. § 1343 ........................................................................23

42 U.S.C. § 1983 ................................................................ *passim*

52 U.S.C. § 10101 .............................................................. *passim*

52 U.S.C. § 10302 ........................................................................22

52 U.S.C. § 20105 ........................................................................22

52 U.S.C. § 20510 ........................................................................22

Civil Rights Act of 1957, Pub. L. No. 85-315 .......................................23

Civil Rights Act of 1964, Pub. L. No. 88-352 .......................................9

Voting Rights Act of 1965, Pub. L. No. 89-110 .....................................9

**Other Authorities**

1972 Op. Atty. Gen. No. 121 .........................................................2

*Civil Rights-1957: Hearings Before the Subcomm. on Constitutional Rights of the S. Comm. on the Judiciary*, 85th Cong. (Feb. 14, 1957) ................................................................... 24, 25

Email from Jonathan Marks, Deputy Secretary for Elections & Commissions, Dep't of State, to County Election Officials (June 1, 2021) ........................................................................11

Fed. R. App. P. 29 .........................................................................1

H.R. Rep. No. 85-291 (1957)....................................................... 24, 25

*Montgomery Cnty. Bd. of Elections v. Chapman*, No. 339 MD 2021 (Oct. 1, 2021 Pa. Commw. Ct.) ...........................................6

Pa. Dep't of State, *Election Ballot Status* .................................................4

Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes* (Sept. 11, 2020) ........................4

## STATEMENT OF INTEREST

The Commonwealth of Pennsylvania respectfully submits this amicus brief in support of appellants pursuant to Federal Rule of Appellate Procedure 29(a)(2).

The Commonwealth intends for this brief to aid the Court's understanding of Pennsylvania election law and voting processes. In particular, the Commonwealth addresses why, under Pennsylvania law, including a date on the envelope of a mailed ballot is immaterial to determining a voter's eligibility, and why contrary arguments misunderstand Pennsylvania law or rest on ill-informed speculation about the Commonwealth's election procedures.

Additionally, the Commonwealth has an interest in ensuring its political subdivisions exercise their authority in accordance with Pennsylvania and federal law. And resolution of this case may assist Pennsylvania courts as they conclusively interpret the relevant state law provision. *See* 1 Pa.C.S. § 1922(2) (directing that Pennsylvania statutes should be interpreted to be "effective").[1]

Finally, the Commonwealth has an interest in ensuring that no eligible Pennsylvania voter is unlawfully disenfranchised. Relatedly, the Commonwealth

---

[1] Mr. Ritter has leveled a bizarre criticism of the Commonwealth's involvement in this matter, suggesting that constitutional concerns about voiding undated ballots should be raised in a different forum. J.A. 808 (Ritter Reply in Supp. Summ. J.). But the Commonwealth has not raised such constitutional concerns, focusing instead on the rights created under federal statutory law. And the Commonwealth is not seeking to invalidate any provision of Pennsylvania law. Rather, the Commonwealth believes that Pennsylvania and federal law can and should be read harmoniously to require the counting of the ballots at issue.

has an interest in ensuring that there are remedies for violations of its citizens'

right to vote. The Commonwealth therefore discusses the misapplication of

precedent that led the district court to conclude the voters here have no cause of

action.

## BACKGROUND

Pennsylvania citizens are qualified to vote if, as of Election Day, they:

(1) will be 18 years old; (2) will have been a citizen for at least one month; (3) will

have lived in Pennsylvania and in their election district for at least thirty days; and

(4) are not imprisoned for a felony conviction. Pa. Const. art. VII, § 1; 25 P.S.

§ 2811; 25 Pa.C.S. § 1301(a).[2] Counties initially assess compliance with these

conditions when an individual submits a voter registration application. 25 Pa.C.S.

§ 1328.

Registered voters that satisfy any of several conditions may vote absentee.

Pa. Const. art. VII, § 14; 25 P.S. § 3146.1. Any qualified, registered voter can vote

as a "mail-in elector." 25 P.S. § 3150.11. Voters submit absentee and mail-in ballot

applications to their county board of elections. *Id.* §§ 3146.2, 3150.12. County

boards must confirm that applicants are eligible to vote before approving their

---

[2] *See also Mixon v. Commonwealth*, 759 A.2d 442, 451 (Pa. Commw. Ct. 2000) (holding that individuals with felony convictions, other than those currently incarcerated, may register to vote); 1972 Op. Atty. Gen. No. 121 (concluding durational residency requirements longer than 30 days are unenforceable); U.S. Const. amend. XXVI (prohibiting denial of right to vote to citizens 18 years of age or older because of age).

absentee or mail-in ballot application. *Id.* §§ 3146.2b, 3150.12b. Those approvals are final except that challenges based on ineligibility to vote can be made through 5 p.m. on the Friday before Election Day. *Id.* §§ 3146.2b(c), 3150.12b.

Election district registers (*i.e.*, poll books) identify which registered voters have requested absentee or mail-in ballots. *Id.* §§ 3146.6(b)(1), 3150.16(b)(1). Those voters may not vote in-person unless they surrender their blank absentee or mail-in ballot and its return envelope. *Id.* §§ 3146.6(b)(3), 3150.16(b)(3). Otherwise, a voter who attempts to vote in-person having already requested an absentee or mail-in ballot may vote only provisionally. *Id.* §§ 3146.6(b)(2), 3150.16 (b)(2). If a voter returns an absentee or mail-in ballot before the deadline and also casts a provisional ballot at a polling place, only the absentee or mail-in ballot is counted, regardless of the date written on its return envelope. *Id.* § 3050(a.4)(5)(ii)(F).

Functionally identical procedures govern how voters complete and return an absentee or mail-in ballot. Anytime between receiving the official ballot and 8 p.m. on Election Day, the voter secretly marks their ballot, places the ballot in a secrecy envelope, and then places the secrecy envelope in an outer return envelope. *Id.* §§ 3146.6(a), 3150.16(a). The return envelope has a printed declaration that the voter "shall then fill out, date and sign." *Ibid.* Return envelopes have unique barcodes associated with the voter, allowing ballots to be tracked through the

3

Statewide Uniform Registry of Electors (SURE). Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes* ("Sept. 2020 Guidance") at 2 (Sept. 11, 2020).[3] After sealing the return envelope, the voter delivers the entire package by mail or by hand to their county board of elections. 25 P.S. §§ 3146.6(a), 3150.16(a).

Absentee and mail-in ballots are timely if received by the voter's county board of elections by 8 p.m. on Election Day. *Id.* §§ 3146.6(c), 3150.16(c). To track when a mailed ballot has been received, Department of State Guidance directs counties to "scan the correspondence ID barcode on the outside of the envelope." *See* Sept. 2020 Guidance at 2. Scanning the barcode automatically generates a date stamp that is recorded in the "Date Received" field in the SURE System. *Id.* Voters can use the Department's website to track when their ballot was received. *See* Pa. Dep't of State, *Election Ballot Status*.[4] Timely absentee and mail-in ballots that county boards of elections have verified, that have not been challenged, and for which there is not due proof that the voter has died prior to Election Day, are counted and included with the election results. 25 P.S. § 3146.8(d), (f)-(g).

---

[3] Available at: https://www.dos.pa.gov/VotingElections/OtherServices Events/Documents/Examination%20of%20Absentee%20and%20Mail-In%20Ballot%20Return%20Envelopes.pdf.

[4] Available at: https://www.pavoterservices.pa.gov/pages/ballottracking.aspx.

In the last two general elections, absentee and mail-in ballots returned without a date on outer envelope has been a pervasive problem. *See In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1068-69 (Pa. 2020) (identifying thousands of such ballots having been cast in Allegheny or Philadelphia County during the 2020 election).

After the 2020 election, the Pennsylvania Supreme Court issued its only decision about so-called "undated ballots," ruling that, under Pennsylvania law, the ballots could be counted for the 2020 general election. *Id.* at 1079 (opinion announcing judgment). The Court, however, did not produce a majority opinion. Three Justices concluded that Pennsylvania law forbids disqualifying undated ballots because "a signed but undated declaration is sufficient and does not implicate any weighty interest." *Id.* at 1078 (opinion announcing judgment). A concurring Justice wrote that Pennsylvania law mandates a date on the outer envelope no matter what interest it serves, but agreed that undated ballots should be counted in 2020 because even diligent voters would not have known the consequence of omitting the date. *Id.* at 1089 (Wecht, J., concurring). Three other Justices would have voided undated ballots because they considered the date to serve important purposes. *Id.* at 1090–91 (Dougherty, J., concurring and dissenting).

5

In the same case, four Justices identified that voiding ballots for minor errors may conflict with 52 U.S.C. § 10101(a)(2)(B). *Id.* at 1074 n.5 (opinion announcing judgment); *id.* at 1089 n.54 (Wecht, J., concurring). The opinion announcing the judgment described one party as having argued with "persuasive force" that there would be a conflict, *id.* at 1074 n.5, and later explained that, under Pennsylvania law, "any handwritten date [is] unnecessary and, indeed, superfluous," *id.* at 1077 (opinion announcing judgment).

Questions about what Pennsylvania law requires as to undated ballots have persisted since the Pennsylvania Supreme Court's fractured 2020 decision. Three cases filed in Pennsylvania courts in 2021 raised this issue. One case remains pending. *Montgomery Cnty. Bd. of Elections v. Chapman*, No. 339 MD 2021 (Oct. 1, 2021 Pa. Commw. Ct.). Split panels of the Commonwealth Court issued nonprecedential decisions in the other two, each concluding that the court was bound by the concurring Justice's opinion from *In re Absentee & Mail-in Ballots*. *In re Election in Region 4 for Downingtown Sch. Bd. Precinct Uwchlan 1*, No. 1381 CD 2021, 2022 WL 96156 (Pa. Commw. Ct. Jan. 10, 2022), *appeal denied* 2022 WL 536196 (Pa. Feb. 23, 2022); *Ritter v. Lehigh Cnty. Bd. of Elections*, No. 1322 CD 2021, 2022 WL 16577, at *8 (Pa. Commw. Ct. Jan. 3, 2022), *appeal denied* 2022 WL 244122 (Pa. Jan. 27, 2022).

6

## SUMMARY OF ARGUMENT

Disenfranchising the 257 qualified voters who failed to date the declaration on their absentee or mail-in ballot's return envelope violates those voters' rights under federal law. That is so because omitting a date is "an error or omission" on a "record or paper relating to . . . [an] act requisite to voting" that is not "material in determining whether such individual is qualified under State law." 52 U.S.C. § 10101(a)(2)(B).

Pennsylvanians are qualified to vote if they meet the state's age, citizenship, and residency requirements as of Election Day. *See* 25 P.S. § 2811(2), (3); *id.* § 3146.8(d); 25 Pa. C.S. § 1301. And mailed ballots are timely if they are received by 8 p.m. on Election Day. 25 P.S. §§ 3146.6(c), 3150.16(c). For each reason, including a date on a ballot return envelope is not "material" to determining a voter's eligibility. Indeed, counties count ballots returned in envelopes with "wrong" dates. Nor does the date serve any purpose in preventing fraud. "Back-dating" a ballot envelope after the fact would not allow a voter to avoid Pennsylvania's received-by deadline.

For this election, ballot return envelopes have been made a "record or paper relating to . . . [an] act requisite to voting." Because § 10101 defines "vote" to mean "all action necessary to make a vote effective," a ballot return envelope is a "record or paper relating to . . . [an] act requisite to voting" when, as here,

7

completing it in a particular way has been made a precondition for counting a ballot.

Under *Gonzaga University v. Doe*, 536 U.S. 273 (2002), the right that §10101(a)(2)(B) guarantees is presumptively enforceable through 42 U.S.C. § 1983. Nothing overcomes that presumption; rather, both the language of § 10101 and its legislative history establish that the U.S. Attorney General's enforcement authority is a complement to the private suits that have occurred since the 19th century. *See* 52 U.S.C. § 10101(d), (e), (g). Because the district court failed to recognize that this suit was brought under § 1983, it inverted the applicable burden and asked if the voters had established that Congress meant for § 10101 to provide its own remedy. Because § 1983 plainly provides a cause of action here, this Court need not engage in that analysis. Still, the same statutory text and legislative history that confirm § 1983 provides a remedy also establish that § 10101 creates its own cause of action, thus satisfying the standard announced in *Alexander v. Sandoval*, 532 U.S. 275 (2001).

## ARGUMENT

### I.    Disqualifying Undated Ballots Infringes Voters' Rights Under § 10101(a)(2)(B)

Federal law provides:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other

8

act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).[5] That statute was enacted to end trivial requirements

that "served no purpose other than as a means of inducing voter-generated errors

that could be used to justify" denying the right to vote. *Fla. State Conf. of NAACP*

*v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). Denying eligible Pennsylvania

voters' right to vote for merely failing to date the envelope used to return an

absentee or mail-in ballot violates § 10101(a)(2)(B).[6]

### A. The Date on a Ballot Return Envelope Is Not Material to Determining Voters' Qualifications under Pennsylvania Law

Dating the declaration on an absentee or mail-in ballot return envelope does

not assist in determining if the ballot was cast by someone eligible to vote under

Pennsylvania law. Therefore, a date is not "material" and omission of a date cannot

be used to disenfranchise any Pennsylvania voter.

---

[5] When initially passed, the statute read "No person acting under color of law shall . . . deny the right of any individual to vote in any Federal election . . . ." Civil Rights Act of 1964, Pub. L. No. 88-352, § 101. Congress later amended the statute to delete "Federal." Voting Rights Act of 1965, Pub. L. No. 89-110, § 15.

[6] The district court did not reach this question because it incorrectly concluded the voters do not have a cause of action. *Infra* at 19-25. Notwithstanding that, this Court should because the voters' right to relief on this purely legal question is clear.

To determine whether a denial of the right to vote violates § 10101(a)(2)(B), courts compare the erroneous or omitted information against state law voter qualifications. *See, e.g.*, *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308-09 (N.D. Ga. 2018); *Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1270 (W.D. Wash. 2006); *Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005). If the error or omission, accepted as true, does not preclude (or at least interfere with) determining a voter's eligibility, the error or omission is not "material." *NAACP*, 522 F.3d at 1175.

In Pennsylvania, a person may vote if, by Election Day, they are 18 years old, have been a citizen for at least one month, have lived in Pennsylvania and in their election district for at least thirty days, and are not imprisoned for a felony conviction. *Supra* at 2. A dated declaration on a return envelope is not relevant to determining compliance with any of these criteria—Election Day is the material date for determining eligibility. In its recent, nonprecedential decision addressing the undated ballots at issue here, the Commonwealth Court, despite ordering that the ballots be excluded, explained that the date "does not, in any way, relate to whether that elector has met the qualifications necessary to vote in the first place." *Ritter*, 2022 WL 16577, at *9.

Nor does a date on the envelope assist in separating timely cast absentee or mail-in ballots from untimely ones. A ballot is timely if it is *received* by 8 p.m. on

10

Election Day. *Supra* at 4. Any ballot received by that time necessarily will have been completed by that time. Further, counties track when a ballot is received. *See* Sept. 2020 Guidance at 2; *In re Absentee & Mail-in Ballots*, 241 A.3d at 1077 (opinion announcing judgment) ("[T]he county board stamps the date of receipt on the ballot-return and records the date the ballot is received in the SURE system.").

Three Justices of the Pennsylvania Supreme Court correctly observed that this law and procedure provides "a clear and objective indicator of [a ballot's] timeliness, making any handwritten date unnecessary and, indeed, superfluous." *In re Absentee & Mail-in Ballots,* 241 A.3d at 1077 (opinion announcing judgment). Recent Pennsylvania Commonwealth Court judges who have considered the importance of a dated declaration likewise have concluded that it is a meaningless "technicality." *In re Election in Region 4 for Downingtown Sch. Bd. Precinct Uwchlan 1*, No. 1381 CD 2021, 2022 WL 96156, at *7-10 (Pa. Commw. Ct. Jan. 10, 2022) (Covey, J., concurring and dissenting); *Ritter*, 2022 WL 16577, at *11 (Wojcik, J., dissenting).

What is more, nothing in Pennsylvania law allows invalidating ballots that include the "wrong" date. As a matter of practice, counties do not invalidate such ballots. *See, e.g.,* J.A. 79 (Department of State guidance advising counties that "there is no basis to reject a ballot for putting the 'wrong' date on the envelope"); J.A. 254-55 (testimony from Lehigh Board of Elections' Chief Clerk that Lehigh

counted ballots with "wrong" dates for 2021 election). Treating errors—such as the "wrong" date—differently from omissions underscores that the underlying information is unimportant and thus immaterial.

Much of the confusion about whether the date is material originates from the dissenting opinion in *In re Absentee & Mail-in Ballots*, which expressed a view that the absence of a date is not "a mere technical insufficiency we may overlook," 241 A.3d at 1090 (Dougherty, J., concurring and dissenting). Respectfully, the dissenting opinion's assertions do not hold up.

First, the date on a mailed ballot does not confirm a voter's "desire to cast it in lieu of appearing in person at a polling place." *Contra id.* A date on the return envelope is no more confirmation of a voter's intent to vote absentee or by mail-in ballot than is completing, signing, and returning the ballot. More critically, whether someone who has cast an absentee or mail-in ballot has misgivings about having done so is irrelevant. Election district registers identify which voters have requested an absentee or mail-in ballot. *Supra* at 3. Those voters may not vote in person unless they surrender their blank absentee or mail-in ballot, and its envelope, to their polling place; otherwise, they may vote only provisionally. *Id*. If a voter returns a completed absentee or mail-in ballot before the deadline and casts a provisional ballot at a polling place, only the absentee or mail-in ballot is counted, regardless of the date written on it. *Id.*

12

Second, the date does not "establish[] a point in time against which to measure the elector's eligibility to cast the ballot." *Contra In re Absentee & Mail-in Ballots*, 241 A.3d at 1090 (Dougherty, J., concurring and dissenting). Eligibility is assessed as of Election Day. *See, e.g.*, 25 P.S. § 2811(2), (3) (imposing residency requirements for the time period "immediately preceding the election"); *id.* § 3146.8(d) (directing counties to discard absentee and mail-ballots cast by individuals who died before Election Day); 25 Pa. C.S. § 1301 (allowing anyone "who will be at least 18 years of age on the day of the next election" to register).

Third, as already explained, the written date does not "ensure[] the elector completed the ballot within the proper time frame." *Contra In re Absentee & Mail-in Ballots* 241 A.3d at 1090 (Dougherty, J., concurring and dissenting). Nor does it "prevent[] the tabulation of potentially fraudulent back-dated votes." *Contra id.*[7] Relying on Justice Dougherty, the district court repeated that excluding undated ballots is "an important guard against fraud." J.A. 32. The district court hypothesized that "individuals who come in contact with that [undated] outer

---

[7] Justice Dougherty made these points after the Pennsylvania Supreme Court had ordered, for the 2020 election only, that ballots postmarked by Election Day could be counted if they were received up to three days later, and that ballots received during this three-day window lacking postmarks would "be presumed to have been mailed by Election Day unless a preponderance of the evidence demonstrates that it was mailed after Election Day." *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 386 (Pa. 2020).

envelope may, post hoc, fill in a date that is not representative of the date on which the ballot was executed." *Id.*

But because Pennsylvania employs only a "received-by" deadline, *supra* at 4, back-dating is not a way to fraudulently convert an ineligible ballot into a seemingly eligible one. A ballot is received by the deadline (and logged) or it is not. Filling in an incorrect date cannot convert an invalid ballot into a valid one, or vice versa. Pennsylvania law and procedure thus makes the date a voter writes "superfluous." *In re Absentee & Mail-in Ballots,* 241 A.3d at 1077 (opinion announcing judgment). Vague gestures at unidentifiable fraud prevention that are inconsistent with Pennsylvania law do not suggest differently.

Hypothetical scenarios conjured by the parties in this matter only confirm that the date is immaterial to "determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). A voter who may have unexpectedly moved out of state, *see* J.A. 508 (Lehigh Mot. Summ. J.); J.A. 681 (Ritter Opp'n to Summ. J.), or been convicted of a felony, *see* J.A. 682 (Ritter Opp'n to Summ. J.), between completing their ballot and Election Day is ineligible to vote regardless of when they completed their ballot, *supra* at 13 (voter must be eligible as of Election Day).[8] These hypothetical voters are just like a voter

---

[8] People who move within Pennsylvania during the 30 days preceding Election Day remain eligible to vote where they already were registered. 25 P.S. § 2811(3); 25 Pa.C.S. §§ 1501(b), 1902.

14

who dies between completing a mailed ballot and Election Day. And a person who might try to vote in person after having already requested a mail-in ballot, J.A. 508 (Lehigh Mot. Summ. J.); J.A. 682 (Ritter Opp'n to Summ. J.), would not be permitted to do so unless they surrendered their absentee or mail-in ballot and its return envelope. *Supra* at 3.

Before the district court, Mr. Ritter tried to avoid the irrelevance of his hypotheticals by arguing that the date is needed as evidence of whether a voter *whom everyone agrees is ineligible for reasons not having to do with the envelope date* also signed a false declaration. *See* J.A. 681-84 (Ritter Opp'n to Summ. J.)[9] Under this argument, the written date (assumed to be true) can be used to ferret out false declarations submitted by voters who unexpectedly move or are convicted of a felony prior to the election. The logic of this claim aside, the fact remains that ballots cast by these voters should not be counted no matter what. Whether an ineligible voter may also have falsely completed the return envelope's declaration has no bearing on this conclusion.

---

[9] Mr. Ritter has gone so far as to suggest that the date is material because a voter who wrote a false date and was subsequently prosecuted and convicted for doing so would be ineligible to vote in *future* elections. *See* J.A. 684 (Ritter Opp'n to Summ. J.). But the materiality inquiry is "whether such individual is qualified under State law to vote in *such* election," 52 U.S.C. § 10101(a)(2)(B) (emphasis added), not in all current and future elections. Plus, it is still not the date that is material to eligibility, but the conviction.

15

Pennsylvania has now conducted four elections with no-excuse mail-in voting, and questions relating to undated ballots have been litigated on multiple occasions. Yet the arguments for disenfranchising voters who omit the date on their return envelope continue to rely on assertions that are unsupported by Pennsylvania law.

### B. Section 10101(a)(2)(B) Applies to Errors on Ballot Envelopes

Section 10101(a)(2)(B) forbids denying the right to vote "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). Without dispute, a mailing envelope is a "record or paper." And in this case dating a return envelope has been made an "act requisite to voting." Section 10101(a)(2)(B) thus forbids disqualifying ballots because the return envelope omits an immaterial date.

Limiting § 10101(a)(2)(B) to errors or omissions made during voter registration would be irreconcilable with the statute's text. The statute applies to errors made on "any record or paper relating to any application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). If the statute covers just records or papers related to an application or registration then "other act requisite to voting" has no meaning, and no party has suggested one. Narrowing § 10101(a)(2)(B) to records or papers related to registration would therefore violate

the basic rule that statutes should not be interpreted to make language superfluous. *See, e.g., Duncan v. Walker*, 533 U.S. 167, 174 (2001).

So the phrase "other act requisite to voting" must capture a category of actions distinct from applying and registering to vote. As it is, § 10101 defines that category of action. Congress specifically defined "vote" for purposes of § 10101 to include "*all action necessary to make a vote effective including*, but not limited to, registration or other action required by State law prerequisite to voting, *casting a ballot*, *and having such ballot counted* . . . ." 52 U.S.C. § 10101(e) (emphasis added); *see also id.* § 10101(a)(3)(A) ("For purposes of this subsection . . . the term 'vote' shall have the same meaning as in subsection (e) of this section."). That means the "other act[s] requisite to voting" encompasses acts "necessary to make a vote effective." There is nothing remotely confusing about following the statute's plain text such that § 10101(a)(2)(B) applies to an "error or omission on any record or paper relating to any application, registration, or other act [necessary to make a vote effective]." *Contra* J.A. 679 (Ritter Opp'n to Summ. J.).

Consistent with what § 10101 says, one court recently reached the straightforward conclusion that § 10101(a)(2)(B) "isn't limited to . . . voter registration." *Common Cause v. Thomsen*, -- F. Supp. 3d --, No. 19-323, 2021 WL 5833971, at *3 (W.D. Wis. Dec. 9, 2021). Other courts have likewise applied § 10101(a)(2)(B) beyond voter registration, including to denials of the right to vote

because of errors or omissions made on an absentee ballot envelope. *League of Women Voters of Arkansas v. Thurston*, No. 20-5174, 2021 WL 5312640, at \*4 (W.D. Ark. Nov. 15, 2021); *Martin*, 347 F. Supp. 3d at 1308–09.

Lehigh's mistaken argument that § 10101(a)(2)(B) governs only voter registration borrows heavily from *Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004), which denied a motion for a temporary restraining order seeking relief under that statute, J.A. 503-05 (Lehigh Mot. Summ. J.). Comparisons to *Friedman* fail to grasp that the relevant error was that the ballot at issue arrived after Florida's receipt deadline. 345 F. Supp. 2d at 1371. That, the district court reasoned, was not an error made on a "record or paper." *Id.* at 1371-72. So, the court concluded, even if Congress was "concerned about denials of the right to vote at all stages and components of the voting process—from application to registration to casting to counting," the statute "provides specifically for protections against denials based on errors or omissions on '*records or papers*' that are immaterial to the determination of an individual's qualification to vote." *Id.* (emphasis added). Here, unlike in *Friedman*, the envelopes used to return a ballot are indisputably "records or papers."

Given the statute's own definition of "vote," there is no basis for limiting the meaning of "other act requisite to voting" based on the canon of *ejusdem generis*. C*ontra* J.A. 677-78 (Ritter Opp'n to Summ. J.).The Supreme Court has rejected

resorting to such interpretative canons when the statute itself provides an operative definition. *See Bilski v. Kappos*, 561 U.S. 593, 604 (2010). It also has directed that courts should not "woodenly apply [*ejusdem generis*]" just because the disputed phrase appears in a list. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008). The unmodified inclusion of "other act requisite to voting" and the statute's unambiguously broad definition of "vote" should be "read to mean what they literally say," *Ali*, 552 U.S. at 227 (cleaned up), rather than artificially circumscribed.

## II.    Voters Can Bring Suit to Enforce § 10101(a)(2)(B)'s Protections

The district court erred in holding that voters cannot sue for violations of § 10101(a)(2)(B).

Most fundamentally, the district court neglected to consider if 42 U.S.C. § 1983 expressly authorizes the voters' suit, as the voters pleaded and argued. J.A. 52 (Complaint); J.A. 752 (Voters' Opp'n to Summ. J.). While there is overlap between the analysis the district court performed under *Alexander v. Sandoval*, 532 U.S. 275 (2001), to determine if § 10101 implies a right of action, and that it should have performed under *Gonzaga University v. Doe*, 536 U.S. 273 (2002), to determine if § 10101(a)(2)(B) is enforceable through § 1983, the analyses diverge such that § 1983 allows this suit regardless of whether there also is an implied action.

Both *Sandoval* and *Gonzaga* direct courts to conduct a two-part inquiry in determining whether a statute creates a private right of action (*Sandoval*) or a private right enforceable under §1983 (*Gonzaga*). The first part of the inquiry is the same: a court must ask "whether Congress intended to create a federal right." *Gonzaga*, 536 U.S. at 283. That inquiry incorporates whether "Congress intended that the statutory provision in question benefits the plaintiff"; "whether the right asserted is so 'vague and amorphous' that its enforcement would strain judicial competence"; and "whether the statute unambiguously imposes a binding obligation on the states." *Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009).

The only circuit court to consider if § 10101(a)(2)(B) creates a federal right concluded it does. *Schwier v. Cox*, 340 F.3d 1284, 1296-97 (11th Cir. 2003). The district court concluded the same. J.A. 24, 29. Those conclusions are correct. Section 10101(a)(2)(B)'s focus on the benefitted class—voters—unavoidably follows from its assurance of "the right of any individual to vote in any election." The right it affords is neither vague nor amorphous—it is the right to have your vote counted notwithstanding trivial mistakes. And the statute imposes an indisputable obligation, forbidding denials of the right for those trivial mistakes.

The *Sandoval* and *Gonzaga* inquiries diverge at the second step, which is where the district court went astray. Federal rights are enforceable through an

implied cause of action only if Congress also created a private remedy. *Alexander*, 532 at 286. But federal rights are "presumptively enforceable" in an action under § 1983. *Gonzaga*, 536 U.S. at 283. That presumption is rebutted only if "Congress shut the door to private enforcement either expressly, through specific evidence from the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* at 284 n.4. Because these standards differ, § 1983 may be available where an implied cause of action is not (and vice versa if, for example, the defendant is not a state actor).[10]

By applying the wrong test, the district court flipped the burden and looked for evidence of congressional intent to create a private right of action through § 10101(a)(2)(B), rather than evidence of congressional intent to preclude enforcement by way of § 1983. It faulted the Eleventh Circuit for not applying a similar presumption, J.A. 28-29, but that court got it right, *Schwier*, 340 F.3d at 1294-97. In *Schwier*, the Eleventh Circuit recognized that plaintiffs brought their suit under § 1983; below, the district court did not mention it.

---

[10] As the dissenting justice in *Sandoval* observed, the Court would not have needed to consider the existence of an implied cause of action had the plaintiff used § 1983 instead. 532 U.S. at 299–300 (Stevens, J., dissenting); *see also McGovern v. City of Philadelphia*, 554 F.3d 114, 120–21 (3d Cir. 2009) (noting § 1983 may be available even when there is no implied cause of action).

What is more, the district court's analysis of congressional intent was flawed. It concluded that the U.S. Attorney General's enforcement power under § 10101(c) is meant to be exclusive. Yet the Supreme Court already has ruled that federal enforcement of voting rights can coexist with private actions. *Allen v. State Bd. of Elections*, 393 U.S. 544, 556–57 (1969). And here, § 10101's text and the relevant legislative history explicitly presuppose that the Attorney General's authority is complementary.

First, paragraph (d) gives district courts jurisdiction for actions under § 10101 "without regard to whether the party aggrieved shall have exhausted any administrative or other remedies that may be provided by law." 52 U.S.C. § 10101(d). As the voters have explained, this paragraph contemplates actions by voters—the "party aggrieved." Appellants' Br. at 26-27 (Doc. No. 32). Title 52 regularly distinguishes between the "aggrieved" party in a proceeding to enforce voting rights and the U.S. Attorney General. 52 U.S.C. §§ 10302(a), 20105(a), 20510. Plus, the U.S. Attorney General would not need to exhaust administrative remedies. *Schwier*, 340 F.3d at 1296.

Second, paragraphs (e) and (g) contemplate actions brought by a party other than the Attorney General. The former sets out specific procedures that apply to "any proceeding instituted [by the Attorney General]," 52 U.S.C § 10101(e), a preface that would be unnecessary if there was no alternative. Paragraph (g)

reinforces the same point, again describing procedures specific to "any proceeding brought [by the Attorney General] to enforce subsection (b) of this section." *Id.* § 10101(g). That, too, would be needless prefatory language if the Attorney General's powers were exclusive.

Third, § 121 of the Civil Rights Act of 1957, the same act that invested the U.S. Attorney General with enforcement authority, amended 28 U.S.C. § 1343 to specifically grant district courts jurisdiction over actions to recover damages for violations of the right to vote. Civil Rights Act of 1957, Pub. L. No. 85-315, § 121. The U.S. Attorney General, however, may seek only "preventive relief." 52 U.S.C § 10101(c). Adding the jurisdictional provision while simultaneously eliminating the cause of action needed to invoke that jurisdiction would be inexplicably bizarre.

Because this text unequivocally confirms that § 1983 provides the voters a cause of action, using the *Sandoval* framework to determine if § 10101 independently supplies a cause of action is gratuitous. Still, the same text that confirms that the presumption of § 1983's availability cannot be overcome also signals that § 10101 itself creates a right of action. None of paragraphs (d), (e), and (g), or the specific grant of jurisdiction over actions for damages, makes sense if Congress did not intend for a private remedy to exist.

While legislative history could not supplant what the statute emphatically communicates, the relevant history substantiates that § 10101 is privately enforceable through § 1983 at a minimum. The voters' brief in this court capably describes the relevant legislative history. Appellants' Br. at 34-37(Doc. No. 32). But it is worth emphasizing how insistent the architect of § 10101(c) was that it would not replace private suits.

Before Congress gave the U.S. Attorney General power to enforce what is now § 10101, private citizens enforced violations of that section's guarantees through § 1983 actions. H.R. Rep. No. 85-291, at 12 (1957) (stating "Section 1983 of Title 42 U.S.C. has been used to enforce the rights . . . contained in Section 1971"); *Civil Rights-1957: Hearings Before the Subcomm. on Constitutional Rights of the S. Comm. on the Judiciary* ("Brownell Testimony"), 85th Cong. at 3 (Feb. 14, 1957) (statement and testimony of the Hon. Herbert Brownell, Jr., Attorney General of the United States) (stating private citizens have long used § 1983 actions for violations of the right to vote); *Schwier*, 340 F.3d at 1295 (collecting cases). Former U.S. Attorney General Herbert Brownell, Jr., had initially proposed the legislation that ultimately gave his office supplementary enforcement authority, and oversaw drafting of the legislation. *See* Brownell Testimony, 85th Cong. at 1, 203. In his testimony to Congress about the proposal, he was explicit that, "[u]nder the laws amended if this program passes, private

24

people will retain the right they have now to sue in their own name and the

Attorney General will have the additional right which he does not now have to

bring on behalf of the United States for the protection of its citizens the new

remedy remedial [sic] actions." *Id.* at 73; *see also id.* at 72 ("Private individuals . . .

could still bring their own actions.").[11]

The House certainly appreciated the complementary nature of the U.S.

Attorney General's enforcement power. Its report introduced the proposed

provision as "To Provide Means for Further Securing and Protecting the Right to

Vote." H.R. Rep. No. 85-291, at 11.

Therefore, legislative history, just like statutory text, confirms what

intuitively must be true: "It is highly unlikely that in enacting civil rights

legislation for the first time since the Reconstruction era [Congress] would

simultaneously withdraw existing protection from § 10101." *Schwier*, 340 F.3d at

1295 (cleaned up). What is more, it is utterly implausible that Congress silently

intended to take such counterintuitive action.

---

[11] The district court used statements from Attorney General Brownell as evidence that civil remedies did not exist before 1957, J.A. 27, but the Attorney General was quite clearly lamenting only the Department of Justice's historic lack of civil enforcement power, *see* Brownell Testimony, 85th Cong. at 3.

25

## CONCLUSION

For the reasons above, the district court should be reversed and, further, should be directed to enter judgment for the voters on Count I.

April 1, 2022                                    Respectfully submitted,

JOSH SHAPIRO
Attorney General
Commonwealth of Pennsylvania
MICHAEL J. FISCHER
Chief Counsel and Executive
Deputy Attorney General

/s/ *Jacob B. Boyer*
JACOB B. BOYER
Deputy Attorney General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(267) 768-3968
jboyer@attorneygeneral.gov

## CERTIFICATES

I, Jacob B. Boyer, hereby certify that:

1. I am a member of the bar of this Court;

2. The text of the electronic version of this brief is identical to the text of the paper copies;

3. A virus detection program was run on the file and no virus was detected; and

4. This brief contains 6,084 words and therefore complies with Federal Rules of Appellate Procedure 29(2)(5) and 32(a)(7)(B). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

/s/ *Jacob B. Boyer*

## CERTIFICATE OF SERVICE

I, Jacob B. Boyer, hereby certify that a copy of this amicus brief has been served on all counsel of record using the Court's CM/ECF system.

I further certify that seven hard copies of this brief will be sent by first class mail to the Clerk of the United States Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.


/s/ *Jacob B. Boyer*