IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

———————————

No. 22-1499

———————————

LINDA MIGLIORI, et al.,

*Appellants,*

v.

LEHIGH COUNTY BOARD OF ELECTIONS, et al.,

*Appellees.*

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 5:22-cv-00397
Honorable Joseph F. Leeson, Jr.

———————————

AMICUS BRIEF OF THE HONEST ELECTIONS PROJECT
IN SUPPORT OF APPELLEES

———————————

Jason B. Torchinsky
Edward M. Wenger
Dennis W. Polio
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street NW, Suite 643-A
Washington, DC 20037
(202) 737-8808 (telephone)
(540) 341-8809 (facsimile)
emwenger@holtzmanvogel.com

April 8, 2022

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the Honest Elections Project does not have a parent corporation or a corporation that owns 10% or more of its stock.

Date:  April 8, 2022                              /s/ *Edward M. Wenger*
                                                               EDWARD M. WENGER

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES................................................................. iii

STATEMENT OF INTEREST ................................................................1

SUMMARY OF THE ARGUMENT ........................................................2

ARGUMENT ......................................................................................4

    I.    BECAUSE THE COMMONWEALTH'S DATED-DECLARATION
        REQUIREMENT DOES NOT IMPLICATE THE RIGHT TO VOTE, IT DOES
        NOT TRIGGER THE MATERIALITY PROVISION ................................4

        A.    There exists no federal right to vote by mail ....................5

        B.    State courts have narrowly construed state law when
                examining the constitutionality of vote-by-mail requirements.........9

        C.    Because there is no right to a mailed ballot, there can be no
                right to vote by mail while omitting a handwritten date.................10

    II.    PENNSYLVANIA'S DATED-DECLARATION REQUIREMENT IS ENTIRELY
        MATERIAL ...........................................................................11

CONCLUSION ....................................................................................15

CERTIFICATE OF BAR MEMBERSHIP ...........................................16

CERTIFICATE OF COMPLIANCE .....................................................17

CERTIFICATE OF SERVICE..............................................................18

# TABLE OF AUTHORITIES

## CASES

*Assoc. of Communities for Reform Now v. Blanco*,
No. 2:06-cv-611 (E.D. La April 21, 2006)......................................................8

*Burdick v. Takushi*,
504 U.S. 428 (1992) ......................................................................11

*Coalition for Good Governance v. Raffensperger*,
No. 1:20-cv-1677, 2020 U.S. Dist. LEXIS 86996
(N.D. Ga. May 14, 2020) ...........................................................6, 10

*In re Ctr. Twp. Democratic Party Supervisor Primary Election*,
4 Pa. D. & C. 4th 555 (C.P. 1989) ...............................................13

*Diaz v. Cobb*,
541 F. Supp. 2d 1319 (S.D. Fla. 2008) .........................................11

*Erfer v. Commonwealth*,
794 A.2d 325 (Pa. 2002) ..............................................................11

*Eu v. San Francisco Cty. Democratic Cent. Comm.*,
489 U.S. 214 (1989)......................................................................11

*Fisher v. Hargett*,
604 S.W.3d 381 (Tenn. 2020)....................................................8, 9

*Griffin v. Roupas*,
385 F.3d 1128 (7th Cir. 2004).........................................5, 6, 11, 12

*Marks v. Stinson*,
19 F.3d 873 (3rd Cir. 1994) .........................................................13

*Mays v. LaRose*,
951 F.3d 775 (6th Cir. 2020).......................................................5, 6

*McDonald v. Bd. of Election Comm'rs*,
394 U.S. 802 (1969) ...................................................................5, 7

*Nader v. Keith*,
    385 F.3d 729 (7th Cir. 2004).............................................................................12

*In re Nomination Paper of Nader*,
    905 A.2d 450 (Pa. 2006) .................................................................................11

*In re November 3, 2009 Election for Council of Borough*,
    2009 Pa. Dist. & Cnty. Dec. LEXIS 208 ......................................................14

*Opening of Ballot Box of the First Precinct of Bentleyville*,
    143 Pa. Commw. 12, 598 A.2d 1341 (1991) ................................................13

*In re Petition to Contest Nomination of Payton*,
    No. 0049, 2006 Phila. Ct. Com. Pl. LEXIS 366 (C.P. Sep. 14, 2006)............14

*In re State*,
    602 S.W.3d 549 (Tex. 2020)..............................................................................9

*Storer v. Brown*,
    415 U.S. 724 (1974) ...........................................................................................1

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir 2020)...........................................................................6, 7

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) .........................................................................................11

*Working Families Party v. Commonwealth*,
    209 A.3d 270 (Pa. 2019) .................................................................................11

## STATUTES

52 U.S.C. § 10101(b)..................................................................................................2

25 Pa. Stat. Ann. § 3146.6(a) ....................................................................................2

25 Pa. Stat. Ann. § 3150.16(a) ..................................................................................2

# OTHER AUTHORITIES

William T. McCauley, *"Florida Absentee Voter Fraud: Fashioning an Appropriate Judicial Remedy,"* 54 U. Miami L. Rev. 625 (2000) ................12

John C. Fortier & Norman J. Ornstein, *Symposium: The Absentee Ballot and the Secret Ballot: Challenges for Election Reform*, 36 U. Mich. J.L. & Reform (2003) ...............................................................................................12

John Harwood, *Early Voting Begins in Presidential Battlegrounds: In Iowa, 'Ballot Chasers' Seek Decisions and an Edge Weeks Before Election Day*, Sept. 27, 2004 ...........................................................................................12

Michael Moss, *Absentee Votes Worry Officials as Nov. 2 Nears*, N.Y. Times (late ed.)..............................................................................................................12

R.W. Apple Jr., *Kerry Pins Hopes in Iowa on Big Vote From Absentees*, N.Y. Times (nat'l ed.), Sept. 28, 2004 ............................................................12

Ron Lieber, *Cast a Ballot From the Couch: Absentee Voting Gets Easier*, Wall St. J., Sept. 2, 2004 .................................................................................12

## STATEMENT OF INTEREST

The Honest Elections Project (the "Project")[1] is a nonpartisan organization devoted to supporting the right of every lawful voter to participate in free and honest elections. Through public engagement, advocacy, and public-interest litigation, the Project defends the fair, reasonable, and legal measures that legislatures put in place to protect the integrity of the voting process. The Project supports commonsense voting rules and opposes efforts to reshape elections for partisan gain.

The Project has an appreciable interest in this case. As part of its mission, the Project understands how crucial it is to ensure that elections are carried out using lawful methods. Challenges to duly enacted election procedures, such as those brought by the Plaintiffs, can damage the integrity of elections as well as the perceived legitimacy of election results. Indeed, roughly half a century ago, the Supreme Court recognized that "there must be a *substantial* regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974) (emphasis added). This remains just as true today as when Justice White penned it in 1974.

---

[1] Counsel for Appellees Zachary Cohen and David Ritter consent to the filing of this brief. Counsel for Lehigh County Board of Elections and Plaintiffs-Appellants do not object to the filing of this brief. No party authored this brief in any part or contributed money for the preparation of this brief.

Given the Project's focus and expertise, it respectfully submits this brief in support of Defendants-Appellees and to aid the Court as it resolves this action.

## SUMMARY OF THE ARGUMENT

At issue in this case is the way in which a provision of Pennsylvania's Election Code interacts with a provision of the federal Civil Rights Act. The Commonwealth's law requires any person submitting a vote-by-mail ballot to "*date and sign*" a declaration printed on the back of the envelop. 25 Pa. Stat. Ann. § 3146.6(a) (emphasis added); *accord id.* § 3150.16(a). The federal law forbids any person "acting under color of law" to deny anyone else the right to vote based on "an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified . . . to vote . . . ." 52 U.S.C. § 10101(b). In the Plaintiffs' view, the State's decision to enforce the former violates the latter.

The district court correctly determined that the materiality provision may only be enforced by the Attorney General. JA4-33. The Project notes, however, that the Plaintiffs' claims fail for a more fundamental reason. The Commonwealth Code's dated-declaration requirement regulates the *vote-by-mail* process. The Civil Rights Act protects an individual's fundamental *right to vote*. And scores of caselaw at every stage of the federal system are in accord—voting by mail is not synonymous

with voting, and regulation of the former does not amount to deprivations of the latter. Appreciating the different between the Commonwealth-created accommodation to vote by mail and the Constitutionally enshrined right to vote provides another, independent reason for affirmance in this case.

Should the Court disagree and reach the merits, however, the Plaintiffs claims still fail as a matter of law. Pennsylvania is not asking too much of its constituency to sign *and date* an envelope when they avail themselves of the Commonwealth's vote-by-mail accommodation; this is the sort of commonsensical requirement that any deadline-driven vote-by-mail system would self-evidently require. And despite the truly *de minimis* nature of this requirement, complying with it serves profoundly important goals—*e.g.*, fraud prevention, a point expressly recognized by the district court.

The Commonwealth has decided to make voting easier by providing a vote-by-mail option. In return, they have asked those electing this option to provide the minimal information necessary to ensure that elections in the Commonwealth remain free and fair. The consequences that have arisen due to the Plaintiffs' failure to comply with this small ask does not offend the Civil Rights Act. The district court was right to rule in favor of the Defendants, and this Court should affirm.

# ARGUMENT

## I. BECAUSE THE COMMONWEALTH'S DATED-DECLARATION REQUIREMENT DOES NOT IMPLICATE THE RIGHT TO VOTE, IT DOES NOT TRIGGER THE MATERIALITY PROVISION.

Even assuming *arguendo* that the Plaintiffs have authority to bring an action under the materiality provision (and as the district court correctly concluded, they do not), they cannot use it to challenge the Commonwealth's vote-by-mail regulations. The plain text of the materiality provision makes manifest this point: it prohibits persons "acting under color of law" from "*deny[ing] the right of any individual to vote* in any election" due to an immaterial error or omission. In other words, the denial of the right to vote is a prerequisite for any action under that provision. Without it, Plaintiffs cannot leverage the Materiality Provision to support their private right of action.

The question, then, is whether Pennsylvania's dated-declaration requirement implicates the right to vote—and not just the Commonwealth's vote-by-mail accommodation. The answer is plain. There exists no unconditional right to vote by mail under either federal or Pennsylvania law. The dated-declaration requirement applies only to Pennsylvania's vote-by-mail accommodation. Like night follows day, it necessarily follows that the Plaintiffs cannot avail themselves of a statutory provision that expressly requires a voting-rights deprivation to apply.

**A.      There exists no federal right to vote by mail.**

Courts throughout the federal system have long been in accord—"there is no constitutional right to an absentee ballot." *Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020) (citing *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807–09 (1969)). And when the government limits or regulates voting by mail but leaves unencumbered voting in person, courts universally recognize that "[i]t is thus not the right to vote that is at stake here but a claimed right to receive absentee [or mail] ballots." *McDonald*, 394 U.S. at 807. For that reason, the Supreme Court has squarely held that, short of "in fact absolutely prohibit[ing]" a plaintiff from voting *in toto*, their voting rights are not impeded. *Id.* at 808 n.7.

Indeed, the Supreme Court squarely resolved this issue in *McDonald*, a case in which the Court held that an Illinois statute denying certain inmates mail-in ballots did not violate their right to vote. *Id*. at 807. Because the statute burdened only their *asserted* right to an absentee ballot, and because the inmates presented no evidence that they could not vote another way, *id*. at 807-08, the Court held that they had not shown that the state "in fact absolutely prohibited [them] from voting." *Id*. at 808 n.7. For this reason, the *McDonald* Court applied rational-basis review and upheld the absentee-ballot restriction. *Id*. at 808–11.

Other federal circuit courts of appeals have followed suit. For example, in *Griffin v. Roupas*, the Seventh Circuit upheld a district court's motion to dismiss a

claim on behalf of "working mothers who contend[ed] that[,] because it [was] a hardship for them to vote in person on election day, the United States Constitution require[d] Illinois to allow them to vote by absentee ballot." 385 F.3d 1128, 1129 (7th Cir. 2004). In rejecting their claim, the Seventh Circuit noted that they had "claim[ed] a blanket right . . . to vote by absentee ballot"; in other words, "absentee voting at will." *Id.* at 1130. After noting the substantial issues that unregulated and unlimited voting by mail would cause,[2] the Court declined to find that the plaintiffs' request violated their right to vote. *Id.* at 1130-33.

When COVID-19 emerged, plaintiffs throughout the Country tried to cite the pandemic as a reason to expand, as a constitutional matter, vote-by-mail access. They were nearly universally unsuccessful in doing so. *See generally, e.g., Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir 2020); *Coalition for Good Governance v. Raffensperger*, No. 1:20-cv-1677, 2020 U.S. Dist. LEXIS 86996 at *9 n.2. (N.D. Ga. May 14, 2020). The Plaintiffs' challenge in this case is no different. Simply put, no federal court has recognized (or should recognize) that the fundamental right to vote translates into a right to no-excuse, expanded-excuse, or

---

[2] The Court discussed as length how regulating absentee voting helps reduce the danger of voting fraud, invalidly cast ballots, voter mistakes and errors, and deprivation of information that may surface late in elections. *Griffin,* 385 F.3d at 1130-31.

6

(as Plaintiffs claim here) lesser-regulated absentee voting. *Mays*, No. 4:20-cv-341 (JM), 2020 U.S. Dist. LEXIS 54498 at *4-5.

For instance, in *Texas Democratic Party v. Abbott*, a Fifth Circuit motions panel stayed a Western District of Texas order granting a preliminary injunction, which required state officials, to, among other things, distribute mail-in ballots to any eligible voter who wanted one. In so doing, the Fifth Circuit held that: "[t]he Constitution is not 'offended simply because some' groups 'find voting more convenient than' do the plaintiffs because of a state's mail in ballot rules." 961 F.3d at 405 (quoting *McDonald*, 394 U.S. at 810). The Fifth Circuit's mind was not changed even though "voting in person 'may be extremely difficult, if not practically impossible,' because of circumstances beyond the state's control." *Id.* (quoting *McDonald*, 394 U.S. at 810). Critically, the Fifth Circuit indicated that the principles guiding its analysis would apply in the statutory context—in that case, specifically, the Voting Rights Act. *See id*. at 404 n.32 ("And here, unlike in *Veasey* [*v. Abbott*— a challenge to a Texas voter ID law under the Voting Rights Act], the state has not placed any obstacles on the plaintiffs' ability to vote in person." (emphasis in original)).[3]

---

[3] Judge Ho's concurring option further emphasized this point. *See Tex. Democratic Party*, 961 F.3d at 444-45 (noting that "[f]or courts to intervene, a voter must show that the state 'has in fact precluded [voters] from voting'") (emphasis in original) (quoting *McDonald*, 394 U.S. at 808 & n.7)).

In cases before the COVID-19 pandemic, other exigencies were similarly unable to expand the right to vote into a right to vote by mail. In the wake of Hurricane Katrina, the Eastern District of Louisiana dismissed a request to extend the deadline for counting absentee ballots. *Assoc. of Communities for Reform Now v. Blanco*, No. 2:06-cv-611, Order at 1-2 (E.D. La April 21, 2006) (ECF No. 58). The court found that the alleged harms "do not rise to the level of a constitutional or Voting Rights Act violation," *id.* at 3, and noted further the irony in the allegation that "a step taken by the State, apparently to allow as many displaced voters as possible the ability to request and receive an absentee ballot . . . is now being challenged as having the exact opposite effect." *Id.* For this reason, the court found the claim that the State's "efforts will 'disenfranchise' minority voters" to be disingenuous," accordingly, dismissed their claims. *Id.* at 5.

So too here. The Commonwealth endeavored to make voting easier by allowing the entire Pennsylvania electorate to request a vote-by-mail ballot. In return, they asked that those choosing to vote-by-mail date their declarations. The Plaintiffs' failure to comply with this requirement does not enable them to use the Civil Rights Act as a cudgel against the Commonwealth by morphing their vote-by-mail compliance failure into an infringement of their right to vote.

**B.  State courts have narrowly construed state law when examining the constitutionality of vote-by-mail requirements.**

State courts have, like their federal brethren, have also narrowly construed state constitutional provisions when those are used to challenge vote-by-mail regulations. In *Fisher v. Hargett*, 604 S.W. 3d 381 (Tenn. 2020), for instance, the Tennessee Supreme Court rejected a state constitutional challenge to election procedures premised on COVID-19-related difficulties because those procedures placed only "a moderate burden" on voting rights, if at all, and "the State's interests in the efficacy and integrity of the election process are sufficient to justify" it, especially in the context of absentee and mail voting. *Id.* And in *In re State*, the Texas Supreme Court narrowly construing Texas's absentee voting justifications and held that lack of immunity to COVID-19 is not itself a "physical condition" that renders a voter eligible to vote by mail within the meaning of Texas Law. 602 S.W.3d 549 (Tex. 2020).

The common thread in these cases is that same one that forecloses the Plaintiffs-Appellants' claims here. Eligible citizens have a fundamental right to vote. They do not have a fundamental right to vote-by-mail. The materiality provision protects the former, but not the latter. For this reason, the Plaintiffs cannot avail themselves of the materiality provision because they failed to comply with a plain, unobtrusive requirement to date their respective vote-by-mail declarations.

**C.    Because there is no right to a mailed ballot, there can be no right to vote by mail while omitting a handwritten date.**

The foregoing analysis is straightforward and unassailable. Pennsylvania's Election Code does not burden the right to vote. Instead, it makes voting easier by allowing the Commonwealth's electorate to vote-by-mail, provided that they comply with straightforward, commonsensical, non-intrusive safeguards that, while simple to satisfy, remain critical to safeguard the legitimacy and orderly administration of Pennsylvania elections. *See infra* at Sec. II.

In other words, "this is not a case in which the state applied its own policy, adopted a rule, or enacted a statute that burdened the right to vote" in any way whatsoever. *Coalition v. Rafensperger*, No. 1:20-cv-1677, 2020 U.S. Dist. LEXIS 86996, 2020 WL 2509092 at *9 n.2 (N.D. Ga. May 14, 2020). Because the Plaintiffs' voting rights are not implicated by vote-by-mail regulations, it necessarily follows that the requirement to include a dated voter declaration does implicate the right to vote, nor does setting a vote-by-mail ballot aside for failure to comply with this *de minimis* requirement. Without a voting right infringement, the materiality provision never triggers. For this reason, Plaintiffs claims fail as a matter of law, and this Court should conclude the same.

## II.     PENNSYLVANIA'S DATED-DECLARATION REQUIREMENT IS ENTIRELY MATERIAL.

Should the Court find that the Plaintiffs can in fact maintain this action (and for a whole host of reasons discussed throughout this litigation, it should not), their claims still fail as a matter of law. Simply put, the Commonwealth's dated-declaration requirement is material in every sense of the word. Unlimited and unregulated vote-by-mail systems breed chaos and confusion, and jurisdictions within the Commonwealth have experienced this firsthand. It is not too much to ask the Plaintiffs-Appellants to comply with basic, straightforward, readily discernable requirements to have their vote-by-mail ballot counted. Asking the Court to dispense with such requirements and count their ballots anyway is how issues regarding fraud, confidence, and orderly administration metastasize.

"[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Burdick v. Takushi*, 504 U.S. 428, 441 (1992) (as quoted in *In re Nomination Paper of Nader*, 905 A.2d 450, 459-60 (Pa. 2006)).[4] The public's interest in the maintenance, order,

---

[4] Although Pennsylvania's Free Speech and Association Clauses provide protections broader than its federal counterpart, the Supreme Court of Pennsylvania still relies on the federal *Anderson-Burdick* jurisprudence to adjudicate claims related to the administration of elections and voting rights. *Working Families Party v. Commonwealth*, 209 A.3d 270, 284-86 (Pa. 2019) (relying on *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997)). Furthermore, the Supreme Court of Pennsylvania has ruled that Pennsylvania's equal protections provisions are

and integrity of elections is compelling. *See, e.g., Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *Diaz v. Cobb*, 541 F. Supp. 2d 1319, 1335 (S.D. Fla. 2008). Scores of caselaw stand for this universally accepted principle.

Vote-by-mail options involve a tradeoff; as ballot-casting convenience expands, regulation must counterbalance risk. Indeed, in *Griffin v. Roupas*, Judge Posner recounted the many issues that can accompany unlimited absentee voting. In his view, "[v]oting fraud is a serious problem in U.S. elections generally . . . and it is facilitated by absentee voting." *Griffin*, 385 F.3d at 1130-31 (citing John C. Fortier & Norman J. Ornstein, *Symposium: The Absentee Ballot and the Secret Ballot: Challenges for Election Reform*, 36 U. MICH. J.L. & REFORM (2003); William T. McCauley, "Florida Absentee Voter Fraud: Fashioning an Appropriate Judicial Remedy," 54 U. MIAMI L. REV. 625, 631–32 (2000); *Michael Moss, Absentee Votes Worry Officials as Nov. 2 Nears*, N.Y. TIMES (late ed.), Sept. 13, 2004, p. A1.). After comparing no-excuse absentee voting to take-home exams, Judge Posner warned that "[a]bsentee voters . . . are more prone to cast invalid ballots than voters who, being present at the polling place, may be able to get assistance from the election judges if they have a problem with the ballot." *Id*. at 1131 (citing *Nader v. Keith*,

---

coextensive with the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. *Erfer v. Commonwealth*, 794 A.2d 325, 332 (Pa. 2002).

385 F.3d 729, 732-33 (7th Cir. 2004); R.W. Apple Jr., *Kerry Pins Hopes in Iowa on Big Vote From Absentees*, N.Y. TIMES (nat'l ed.), Sept. 28, 2004, p. A18; John Harwood, *Early Voting Begins in Presidential Battlegrounds: In Iowa, 'Ballot Chasers' Seek Decisions and an Edge Weeks Before Election Day*, , Sept. 27, 2004, p. A1; Moss, *supra*; Ron Lieber, *Cast a Ballot From the Couch: Absentee Voting Gets Easier*, WALL St. J., Sept. 2, 2004, p. D1.).

Indeed, the Commonwealth has faced voting fraud, illegal vote-by-mail activity, and improperly cast and handled mail ballots:

- In *Marks v. Stinson*, 19 F.3d 873 (3rd Cir. 1994), two elections officials conspired with a candidate to cause illegally obtained absentee ballots to be cast and County Board of elections rejected four-hundred absentee ballots because they were from unregistered voters).

- In *Opening of Ballot Box of the First Precinct of Bentleyville*, 143 Pa. Commw. 12, 598 A.2d 1341 (1991), four signatures on absentee ballots did not match those on applications for the absentee ballots. And election challenger alleged fraud, and court agreed.

- In *In re Ctr. Twp. Democratic Party Supervisor Primary Election*, 4 Pa. D. & C.4th 555 (C.P. 1989), absentee ballot applications and absentee ballots were completed and submitted for fifteen entirely fictious persons. The candidate then beat their opponent by 14 votes. The nomination was voided, and a run-off election was ordered.

The Commonwealth's dated-declaration requirement is meant to help prevent many of these issues. And as these examples clearly illustrate, unsecure vote-by-mail

processes only increases the chance for fraud, other illegal electoral activity, and improperly cast ballots.

Besides fraud or illegal electoral conduct, mistakes concerning mail-in-voting are well documented in Pennsylvania—even before the COVID-19 pandemic:

- In *In re November 3, 2009 Election for Council of Borough*, 2009 Pa. Dist. & Cnty. Dec. LEXIS 208 (Allegheny County Dec. 2009), an error by an election official changed the vote and caused a tie in a Borough's councilperson election. The official did not call for the absentee ballot to be thrown out since it was cast in accordance with the law and did not involve fraud or tampering.

- In *In re Petition to Contest Nomination of Payton*, No. 0049, 2006 Phila. Ct. Com. Pl. LEXIS 366 (C.P. Sep. 14, 2006), a candidate was stricken from the ballot and mounted a well-organized write-in campaign. Some voters wrote in the candidate for the wrong election and claimed some in-person and absentee votes were incorrectly calculated, which changed the outcome of the election. The court granted a recalculation.

Mistakes happen. But they happen more frequently, and with greater consequences, when commonsensical, simple, yet crucial regulations are allowed to be dispensed with. The Court need not, and should not, do so here by granting the Plaintiffs' the relief they seek.

Vote-by-mail procedures, when adopted, must be accompanied by checks to assure the integrity of elections. Compelling policy considerations thus weigh heavily in against permitting unsecured voting by mail in the Commonwealth by dispensing with easily satisfied safeguards. Through their challenge, Plaintiffs-

Appellants ask the federal courts to cast aside the policy considerations weighed by the Commonwealth based on nothing more than their failure to comply with a necessary dated-declaration regulation that posed no issue for the millions of Pennsylvania voters who successfully cast vote-by-mail ballots. This Court should decline that invitation.

## CONCLUSION

For the foregoing reasons, Amicus Curiae, the Honest Elections Project, respectfully requests the Court affirm the District Court's decision.

Respectfully submitted April 8, 2022,

/s/ *Edward M. Wenger*
Jason B. Torchinsky
Edward M. Wenger
Dennis W. Polio
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street NW, Suite 643-A
Washington, DC 20037
(202) 737-8808 (telephone)
(540) 341-8809 (facsimile)
*emwenger@holtzmanvogel.com*

**CERTIFICATE OF BAR MEMBERSHIP**

I hereby certify that Edward M. Wenger, undersigned and counsel for Amicus Curiae, is a member of the bar of the United States Court of Appeals for the Third Circuit.

Date:  April 8, 2022

/s/ *Edward M. Wenger*
EDWARD M. WENGER

# CERTIFICATE OF COMPLIANCE

1.      I certify that this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.

2.      I further certify that, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f), this Brief contains 3,413 words.

3.      I further certify, pursuant to Local Appellate Rule 31.1(c), that the text of the electronic form of this brief is identical to the text in the paper copies.

4.      I further certify that the electronic form of this brief has been scanned for viruses using Intego VirusBarrier (version 10.9.57), and that no virus was detected.

I understand that a material misrepresentation can result in the court's striking the brief and imposing sanctions.

If the Court so directs, I will provide an electronic version of the brief and a copy of the word or line printout.

Date:  April 8, 2022                          /s/ *Edward M. Wenger*
                                              EDWARD M. WENGER

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Amicus Brief has been served on all

counsel of record using the Court's CM/ECF system.

Date:  April 8, 2022                                   /s/ *Edward M. Wenger*

EDWARD M. WENGER