IN THE

# United States Court of Appeals

FOR THE THIRD CIRCUIT

---

No. 22-1499

---

LINDA MIGLIORI, et al.,

*Appellants*,

V.

LEHIGH COUNTY BOARD OF ELECTIONS, et al.,

*Appellees*.

---

Appeal from the United States District Court for the Eastern District of Pennsylvania
No. 5:22-cv-00397
Honorable Joseph F. Leeson, Jr.

---

AMICUS BRIEF OF SPEAKER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES, BRYAN CUTLER, MAJORITY LEADER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES, KERRY BENNINGHOFF, PRESIDENT PRO TEMPORE OF THE PENNSYLVANIA SENATE, JAKE CORMAN, AND MAJORITY LEADER OF THE PENNSYLVANIA SENATE, KIM WARD IN SUPPORT OF APPELLEES

---

April 11, 2022

Zachary M. Wallen
CHALMERS & ADAMS LLC
301 South Hills Village Drive
Suite LL200-420
Pittsburgh, PA 15241
(412) 200-0842
(412) 235-5001 (*facsimile*)
zwallen@chalmersadams.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ I

INTEREST OF AMICI CURIAE ........ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 2

ARGUMENT ........ 4

I. THE LEGISLATIVE HISTORY OF THE STATUTES IN QUESTION DEMONSTRATES A CLEAR COMMITMENT BY THE GENERAL ASSEMBLY TO FREE, EQUAL, AND FAIR ELECTIONS ........ 4

II. THE REQUIREMENT TO DATE AND SIGN ABSENTEE AND MAIL-IN BALLOTS SERVES A CLEAR PURPOSE AS A PART OF THE GENERAL ASSEMBLY'S COMPREHENSIVE ELECTION CODE ........ 6

III. THE STATUTES DO NOT VIOLATE THE MATERIALITY PROVISION ........ 8

CONCLUSION ........ 12

COMBINED CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Bonner v. Commonwealth*, No. 15 MAP 2022 (Pa. 2022) ........................................5

*Condon v. Reno*, 913 F. Supp. 946 (D.S.C. 1995)....................................................9

*Diaz v. Cobb*, 435 F. Supp. 2d 1206 (S.D. Fla. 2006) ........................................9, 10

*Donald J. Trump for President, Inc. v. Boockvar*,
493 F. Supp. 3d 331 (W.D. Pa. 2020)...................................................... 7, 12, 13

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004)........................... 10, 12

*Green Party of Pa. v. Aichele*, 89 F. Supp. 3d 723 (E.D. Pa. 2015)........................11

*Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004)....................................................12

*In re 2,349 Ballots in 2020 General Election,*
241 A.3d 694 (Pa. Commw. Ct. 2020). ................................................................6

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 General Election,*
241 A.3d 591 (Pa. 2020)..........................................................................6, 11

*McKay v. Altobello.*, CIVIL ACTION NO. 96-3458 SECTION: E/4,
1996 U.S. Dist. LEXIS 16651 (E.D. La. Oct. 31, 1996) ........................................9

*McLinko v. Commonwealth*, No. 14 MAP 2022 (Pa. 2022) ......................................5

*Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021,
2022 Pa. Commw. Unpub. LEXIS 1 (Pa. Commw. Ct. Jan. 3, 2022) ...... 6, 11, 12

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ...............................................9, 10

*Weber v. Shelley,* 347 F.3d 1101 (9th Cir. 2003)......................................... 7, 12, 13

**Constitutional and Statutory Authorities**

U.S. Constitution Art. I, Section 4 .................................................. 1, 3, 4

25 P.S. § 3031.12 ..........................................................................6

25 P.S. § 3146.1 ..........................................................................4, 6

25 P.S. § 3146.6 ..........................................................................4, 5

25 P.S. § 3150.16 ..........................................................................5

52 U.S.C. § 10101 .................................................. 2, 3, 8, 9, 11, 12

**Other Authorities**

Act No. 37, Session of 1963, Pub. L. No. 707 § 22..................................4, 5

## INTEREST OF AMICI CURIAE[1]

Bryan Cutler, Speaker of the Pennsylvania House of Representatives; Kerry Benninghoff, Majority Leader of the Pennsylvania House of Representatives; Jake Corman, President Pro Tempore of the Pennsylvania Senate; and Kim Ward, Majority Leader of the Pennsylvania Senate, bring this brief as *Amici Curiae* in support of their authority as leaders of a state legislative body under the U.S. Constitution. The Pennsylvania Senate and the Pennsylvania House of Representatives together comprise the General Assembly of the Commonwealth of Pennsylvania (the "General Assembly"), which, as the state legislature of Pennsylvania, is given authority to prescribe the "Times, Places, and Manner of holding elections" by Article I, § 4, cl. 1 of the U.S. Constitution.

*Amici* were granted leave to participate as *amici curiae* by the District Court (JA628), and also participated as *amici curiae* in the related action in the Commonwealth Court of Pennsylvania.

*Amici* present the following arguments in support of upholding the judgment of the court below and respectfully request they be heard in support of the General Assembly's authority to enact election regulations pursuant to the U.S. Constitution's plain text. Because the issues raised in this action directly pertain to

---

[1] No party's counsel authored this brief in whole or in part, and no one other than *Amici* and their counsel contributed money to fund the brief's preparation or submission.

the General Assembly's power under the U.S. Constitution, *Amici* have a significant interest in this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

As Judge Leeson concluded, the District "Court did not find the question of the existence of a private right of action to be particularly close. Rather, this Court found that the text of the statute, its structure, and its legislative history, all suggested that Congress did not intend to create a private right of action." JA829 (opinion denying injunction pending appeal). Indeed, based on the well-considered opinion by Judge Leeson, the controlling case law, and the persuasive briefs submitted by the Appellees, *Amici* believe there are significant reasons for the decision of the District Court to be upheld on procedural grounds alone. *Amici* respectfully submit this *Amici Curiae* brief to offer context for the challenged provisions should this Court need to decide this case on the merits.

In the death rattle of a case that has been litigated and re-litigated for almost half a year since the 2021 General Election, Appellants have abandoned all of their previous claims except that the statutory provision in question allegedly violates the Materiality Provision of the Voting Rights Act ("VRA"). This strategic choice to abandon their constitutional challenges is telling, as it demonstrates that the statutes in question cannot be construed to be an undue burden on the right to vote, the very conclusion reached by Judge Leeson in the District Court. Instead, this Court is left

with Appellants' remaining claim: that this Court should substitute Appellants' opinions on election administration policy for those of the democratically elected General Assembly, notwithstanding the constitutional violence that would result.

The Elections Clause of Article I, § IV of the U.S. Constitution delegates to state legislatures in the first instance, and Congress in the second, the authority to enact regulations for federal elections. Pursuant to these constitutional powers, the General Assembly has adopted a comprehensive election framework to govern the Commonwealth's elections.

Here, pursuant to the grant of authority under the Elections Clause, the General Assembly unambiguously mandated that mail-in ballots' envelopes must bear the date on which the voter signed the voter declaration. Despite Appellants' claims to the contrary, this statutory requirement does not violate the Materiality Provision of the Voting Rights Act.

Appellants' arguments concerning the Materiality Provision can be quickly discarded, since they lack a private right of action to advance their claims. Even if, *arguendo*, this Court needs to consider the merits of Appellants' claims, the Materiality Provision governs discriminatory tactics preventing voter registration. The statutory provision at issue in the present case is neither discriminatory nor does it relate to voter registration.

As such, Appellants' appeal necessarily fails and should be denied, and the decision of the District Court should be affirmed.

## ARGUMENT

### I. The Legislative History of the Statutes in Question Demonstrates a Clear Commitment by the General Assembly to Free, Equal, and Fair Elections

In the present case, the challenged statutory provisions are straightforward sections of the Election Code implemented by the General Assembly pursuant to its constitutional powers under the Elections Clause of Article I, § IV of the U.S. Constitution. By the plain meaning of both the Election Code and the decisions of Pennsylvania courts, it is unequivocal that Pennsylvania law requires both a signature and date on a legally cast mail-in ballot.

While originally absentee voting was limited to military voters, absentee voting was extended to the general public in 1963. *See* Act No. 37, Session of 1963, Pub. L. No. 707, § 22 (amending Section 1306 of the Election Code (25 P.S. § 3146.6) to apply beyond military voters). Even then, Pennsylvania law only allowed absentee voting by those with a statutorily defined excuse to do so, such as physical disability or absence from their municipality on Election Day. *See* 25 P.S. § 3146.1. For someone to vote absentee, the voter would have had to provide a permissible reason to do so, and the voter would have been provided with an absentee ballot that would have had to be returned by the voter no later than 5:00 p.m. on the Friday before the election. *Id*.

Since that 1963 enactment, the procedure for marking an absentee ballot has remained constant. A Pennsylvania absentee voter, after marking his or her ballot, shall:

> then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed 'Official Election Ballot.' This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. **The elector *shall* then fill out, date and sign the declaration printed on such envelope**. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3146.6(a)(emphasis added); *see also* Act No. 37, Session of 1963, Pub. L. No. 707, § 22 (amending Section 1306 of the Election Code (25 P.S. § 3146.6) to apply beyond military voters) ("The elector shall then fill out, date[,] and sign the declaration printed on such envelope.").

In 2019, when the General Assembly expanded the ability to vote by mail by creating a new category of "no excuse" mail-in voting through Act 77[2], that identical procedure of filling out, dating, and signing the envelope was applied to mail-in voters. *See* 25 P.S. § 3150.16(a).

[2] Act 77, itself, is currently the subject of litigation pending in the Supreme Court of Pennsylvania. *See McLinko v. Commonwealth*, No. 14 MAP 2022 (Pa. 2022); *Bonner v. Commonwealth*, No. 15 MAP 2022 (Pa. 2022).

Moreover, the traditional voting options remain available—voters may still choose to request an absentee ballot if they have a statutorily permitted reason for doing so, or vote in-person on Election Day. *See* 25 P.S. § 3146.1; 25 P.S. § 3031.12.

## II. The Requirement to Date and Sign Absentee and Mail-In Ballots Serves a Clear Purpose as a Part of the General Assembly's Comprehensive Election Code

The requirement that electors date and sign their absentee or mail-in ballot return envelope serves a variety of important election administration purposes. "The date on the ballot envelope provides proof of when the 'elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]' The date also ensures the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes." *In re Canvass of Nov. 3, 2020 Gen. Election*, 241 A.3d at 1079 (Dougherty, J., concurring and dissenting) (*quoting In re 2,349 Ballots in the 2020 Gen. Election*, 241 A.3d 694 (Pa. Commw. Ct. 2020) (memorandum); *Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 1, at *10-11 (Pa. Commw. Ct. Jan. 3, 2022) (same).

Judge Leeson reached the same conclusion in his own analysis in this case, holding that these statutory provisions serve "an important public interest in the

integrity of an election process that ensures fair, efficient, and fraud-free elections is served by compliance with the statute mandating the handwritten date requirement." JA32-33. As Judge Leeson further observed:

> An elector's compliance with the signature and date requirement is an important guard against fraud. Where an elector fully complies with the instructions on the outer envelope, the electoral authorities conducting the election can be assured of the date on which the ballot was executed. Where, however, the outer envelope remains undated, the possibility for fraud is heightened, as individuals who come in contact with that outer envelope may, post hoc, fill in a date that is not representative of the date on which the ballot was executed.

JA32.

As the District Court for the Western District of Pennsylvania similarly concluded, "the Pennsylvania legislature 'weigh[ed] the pros and cons,' and adopted a broader system of 'no excuse' mail-in voting as part of the Commonwealth's Election Code." *Donald J. Trump for President, Inc.*, 493 F. Supp. 3d 331, 395 (W.D. Pa. 2020) (*citing Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003)). "And the key point is that the legislature made that judgment in the context of erecting a broader election scheme that authorizes other forms of voting and has many . . . safeguards in place to catch or deter fraud and other illegal voting practices." *Id*. at 396. "In this larger context, the Court cannot say that the balance Pennsylvania struck across the Election Code was unreasonable, illegitimate, or otherwise not 'sufficiently weighty to justify . . .'" *Id*.

Therefore, given the General Assembly's constitutional power to prescribe the time, place, and manner of the Commonwealth's elections, the clear legislative mandate of what is required of the elector, and the election-administration purposes of the statute, the statute in question must be upheld in the present case.

## III. The Statutes Do Not Violate the Materiality Provision

Appellants incorrectly seek relief under the Materiality Provision of the Voting Rights Act, a civil rights statute dealing with discrimination pertaining to voter registration that has no applicability to a non-discriminatory election administration statute.

As determined by Judge Leeson, Appellants "lack the capacity to bring suit under § 10101." JA33. In his carefully considered opinion, Judge Leeson "reviewed the text of the statute, the structure of its provisions, and the legislative history . . . [and] conclude[d] that Congress did not intend to provide a private remedy for the vindication of the personal rights contained in § 10101." JA30.

As such, this appeal necessarily fails on procedural grounds. But even should this Court need to address the merits of Appellants' claims, the Materiality Provision has no application to the matters at hand.

Pursuant to 52 U.S.C. § 10101(a)(2), "[n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error

or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is **qualified under State law to vote** in such election." (emphasis added).

Also known as the "materiality provision" of the Voting Rights Act ("VRA"), this "provision was intended to address the practice of requiring unnecessary information for **voter registration** with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (emphasis added). "This [provision] was necessary to sweep away such tactics as disqualifying an applicant who failed to list the exact number of months and days in his age." *Condon v. Reno*, 913 F. Supp. 946, 950 (D.S.C. 1995). It is "an anti-discrimination statute, designed to eliminate discriminatory practices of registrars through arbitrary enforcement of registration requirements, and it did not address the intentional refusal to provide required information." *McKay v. Altobello*, CIVIL ACTION NO. 96-3458 SECTION: E/4, 1996 U.S. Dist. LEXIS 16651, at *1 (E.D. La. Oct. 31, 1996).

"There are two types of non-material omissions possible under the VRA: 1) failure to provide information, such as race or social security number, that is not directly relevant to the question of eligibility; and 2) failure to follow needlessly

technical instructions, such as the color of ink to use in filling out the form." *Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1213 (S.D. Fla. 2006).

Said statutory "section . . . provides specifically for protections against denials based on errors or omissions on 'records or papers' that are immaterial to the determination of an individual's qualification to vote." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1372 (S.D. Fla. 2004). Such "error and omission" . . . [must] pertain to determining eligibility to vote." *Id*.

Accordingly, the challenged statutory language in this case is far afield from the types of provisions that have been held to be violative of the Materiality Provision, as the date-and-sign statute has a clear administrative purpose, only constitutes a limited burden to all absentee and mail-in voters, and has no application to voter registration. *Compare Diaz*, 435 F.Supp. 2d at 1213; *see also Schwier v. Cox*, 439 F.3d 1285 (11th Cir. 2006) (affirming immateriality of statutory provision that required disclosure of social security numbers for purposes of the VRA when required disclosure of such information is *otherwise prohibited by federal law*).

Moreover, despite the longstanding enactment of the materiality provision, it has seldom been the subject of litigation in Pennsylvania state[3] or federal courts.[4]

Indeed, the Commonwealth Court dismissed this very challenge in January when it correctly concluded "that section 10101(a)(2)(B) is inapplicable because section 1306-D(a) of the Election Code dictates the validity of a mail-in vote that has been cast by an elector who is otherwise qualified to vote, and does not, in any way, relate to the whether that elector has met the qualifications necessary to vote in the first place." *Ritter v. Lehigh Cty. Bd. Of Elections*, No. 1322 C.D. 2021, 2022

---

[3] In the 2020 canvassing case, both the OAJC and the concurring opinion of Justice Wecht reference in footnotes a party's contention that certain provisions of the Election Code could potentially violate 52 U.S.C. § 10101(a)(2). *See In re Canvass of Nov. 3, 2020 Gen. Election*, 241 A.3d at fn. 5 (OAJC) and fn. 54 (Wecht, J., concurring). Neither opinion, however, gives countenance to this argument beyond noting it. Moreover, it would seem that a more natural reading of Justice Wecht's reference than that taken by the court below is that Justice Wecht believes that 52 U.S.C. § 10101(a)(2) *could be* implicated by *future* revisions to the Election Code by the General Assembly as he references it in a footnote to his expressed wish that "the General Assembly might clarify and streamline the form and function of the declaration, perhaps prescribing its form to advance clarity and uniformity across the Commonwealth." *Id*. at 1089 (Wecht, J., concurring). Indeed, in that same footnote, he makes this clear by stating: "… I certainly would expect the General Assembly to bear that binding provision [relating to section 10101(a)(2) of the Voting Rights Act] in mind when it reviews our Election Code." *Id*.

[4] Other than Judge Leeson's decision below, the 2020 canvassing case, and the state court litigation concerning the present case, *Amici Curiae* only identified one case where a court has ever addressed whether a Pennsylvania statute violated the provision in question. In *Green Party of Pennsylvania v. Aichele*, this Court rejected an argument that the Election Code's requirements for the nomination papers violated 52 U.S.C. § 10101. *See Green Party of Pa. v. Aichele*, 89 F.Supp. 3d 723, 753 (E.D. Pa. 2015).

Pa. Commw. Unpub. LEXIS 1, at *26 (Pa. Commw. Ct. Jan. 3, 2022) (*citing Friedman v. Snipes*, 345 F.Supp.2d 1356, 1371 (S.D. Fla. 2004).

The Materiality Provision has never been held to invalidate a provision of the Pennsylvania Election Code and is completely inapplicable to the present circumstances. Accordingly, this Court should affirm the decision of the District Court.

## CONCLUSION

"The striking of the balance between discouraging fraud and other abuses and encouraging turnout is quintessentially a legislative judgment with which we judges should not interfere unless strongly convinced that the legislative judgment is grossly awry." *Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004). Here, the Court below rejected that argument and concluded that the statutory provisions in question serve "an important public interest in the integrity of an election process that ensures fair, efficient, and fraud-free elections is served by compliance with the statute mandating the handwritten date requirement." JA33.

Accordingly, *Amici Curiae* respectfully request that this Court uphold the General Assembly's constitutional power and responsibility as the Commonwealth's "democratically-elected representatives to weigh the pros and cons of various balloting systems." *Weber*, 347 F.3d at 1106. "In this larger context, the Court cannot say that the balance Pennsylvania struck across the Election Code was unreasonable,

illegitimate, or otherwise not 'sufficiently weighty to justify . . .'" *Donald J. Trump for President, Inc.*, 493 F. Supp. 3d at 395 (*citing Weber*, 347 F.3d at 1107).

Accordingly, *Amici Curiae* respectfully request that this Court deny the Appellants' appeal and affirm the decision of the District Court.

Respectfully submitted,

Dated: April 11, 2022

*/s/ Zachary M. Wallen*

Zachary M. Wallen
Pennsylvania Bar No. 309176
CHALMERS & ADAMS LLC
301 South Hills Village Drive
Suite LL200-420
Pittsburgh, PA 15241
(412) 200-0842
(412) 235-5001 (*facsimile*)
zwallen@chalmersadams.com

*Counsel for Amici Curiae*
*Speaker of the Pennsylvania House of Representatives, Bryan Cutler, Majority Leader of the Pennsylvania House of Representatives, Kerry Benninghoff, President Pro Tempore of the Pennsylvania Senate, Jake Corman, and Majority Leader of the Pennsylvania Senate, Kim Ward*

## COMBINED CERTIFICATIONS

I, Zachary M. Wallen, hereby certify that:

1. I am a member of the bar of this Court;

2. The text of the electronic version of this brief is identical to the text of the paper copies;

3. This file was scanned with the most recent version of Windows Defender (1.363.150.0), and no virus was detected; and

4. This brief contains 2,980 words and therefore complies with Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(5).

In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

Dated: April 11, 2022

*/s/ Zachary M. Wallen*
*Counsel for Amici Curiae Speaker of the Pennsylvania House of Representatives, Bryan Cutler, Majority Leader of the Pennsylvania House of Representatives, Kerry Benninghoff, President Pro Tempore of the Pennsylvania Senate, Jake Corman, and Majority Leader of the Pennsylvania Senate, Kim Ward*

**CERTIFICATE OF SERVICE**

I filed this motion and accompanying documents with the Court via ECF, which will electronically notify all counsel of record.

Dated: April 11, 2022

*/s/ Zachary M. Wallen*
*Counsel for Amici Curiae Speaker of the Pennsylvania House of Representatives, Bryan Cutler, Majority Leader of the Pennsylvania House of Representatives, Kerry Benninghoff, President Pro Tempore of the Pennsylvania Senate, Jake Corman, and Majority Leader of the Pennsylvania Senate, Kim Ward*