**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1499

_____

MS. LINDA MIGLIORI; FRANCIS J. FOX; RICHARD E.
RICHARDS; KENNETH RINGER; SERGIO RIVAS,
*Appellants*

v.

ZACHARY COHEN,
*Intervenor – Plaintiff*

v.

LEHIGH COUNTY BOARD OF ELECTIONS

v.

DAVID RITTER,
*Intervenor - Defendant*

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 5-22-cv-00397
District Judge: Honorable Joseph F. Leeson

_____

Argued: May 18, 2022

_____

Before: McKEE, GREENAWAY JR., and MATEY, *Circuit
Judges*.

(Opinion filed: May 27, 2022)

Adriel I. Cepeda Derieux
Sophia Lin Lakin
Stephen A. Loney, Jr.
Ari J. Savitzky **[Argued]**
Marian K. Schneider
Richard T. Ting
Witold J. Walczak
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004

Connor P. Hayes
110 Piper Drive
Pittsburgh, PA 15234
   *Counsel for Plaintiff-Appellants*

Adam C. Bonin
400
121 South Broad Street
Philadelphia, PA 19107
   *Counsel for Intervenor-Plaintiff-Appellee*

Joshua Mazin **[Argued]**
Lucas J. Repka
RepkaMazin
108 East Center Street
Nazareth, PA 18064
   *Counsel for Intervenor-Defendant-Appellee*

James G. Gorman
Francis G. Notarianni
Shohin H. Vance
Joshua J. Voss **[Argued]**
Samantha G. Zimmer
Kleinbard
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
   *Counsel for Intervenor-Defendant-Appellee*

Jacob B. Boyer **[Argued]**
Michael J. Fischer

Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103
*Counsel for Amicus Appellant Commonwealth*
*of Pennsylvania*

Noah Bokat-Lindell **[Argued]**
Tovah R. Calderon
United States Department of Justice
Civil Rights Division, Appellate Section
P.O. Box 14403
Ben Franklin Station
Washington, DC 20044
*Counsel for Amicus Appellant United States of*
*America*

Edward M. Wenger
Holtzman Vogel Baran Torchinsky & Josefiak
2300 N Street N.W.
Suite 643-A
Washington, D.C. 20037
*Counsel for Amicus Appellee The Honest*
*Elections Project*

Zachary M. Wallen
301 South Hills Village Drive
Suite LL200-420
Pittsburgh, PA 15241
*Counsel for Amici Appellee Speaker*
*Pennsylvania House of Representatives,*
*President Pro Tempore Pennsylvania Senate,*
*Majority Leader of the House of*
*Representatives, Majority Leader of the*
*Pennsylvania Senate*

_____

OPINION

_____

McKee, *Circuit Judge.*

The Materiality Provision of the Civil Rights Act[1] prohibits any "person acting under color of law [from] deny[ing] the right of any individual to vote in any election because of an error or omission . . . if such error or omission is not material in determining whether such voter is qualified . . . to vote in such election."[2] In Pennsylvania, an error or omission is material to a voter's qualifications to vote if it is pertinent to either the voter's age, citizenship, residency, or felony status[3] or the timeliness of the ballot.[4]

We are asked to determine if a date on the outside of a mail-in ballot, required under state law, is material to the voter's qualifications and eligibility to vote. However, in resolving that question, we must decide whether private plaintiffs can even bring this suit to enforce the Materiality Provision.

We hold that private plaintiffs have a private right of action to enforce § 10101 under 42 U.S.C. § 1983, and further hold that the dating provisions contained in 25 Pa. Cons. Stat. §§ 3146.6(a) and 3150.16 are immaterial to a voter's qualifications and eligibility under § 10101(a)(2)(B). Accordingly, we will remand to the District Court and direct that Court to enter an order that the undated ballots be counted.

## I.    Factual Background

In 2019, the Pennsylvania General Assembly enacted new mail-in voting provisions, which permitted all registered voters to vote by mail.[5] To receive the mail-in ballot, a voter must first complete an application that requires the voter to provide his or her name, address of registration, and proof of

_____

[1] 52 U.S.C. § 10101(a)(2)(B).

[2] *Id*.

[3] *See* 25 Pa. Cons. Stat. §§ 1301(a), 2811, 3150.16(b).

[4] *Id.* § 3146.6.

[5] Act of Oct. 31, 2019, PA. LAWS 552, No.77 § 8.

identification.[6] The county board of elections then verifies that information and compares the application to the information on record for the voter.[7] If the information on the request for a mail-in-ballot is consistent with the registration information for that voter, the voter receives a ballot package that contains a ballot, a secrecy envelope, a return envelope, and instructions for completing the absentee or mail-in ballot.[8] The voter casts his or her vote by marking the ballot, placing it in the secrecy envelope, and then placing the secrecy envelope in the return envelope.[9] Under the Pennsylvania Election Code, the voter must "fill out, date and sign the declaration," otherwise known as the "voter declaration" printed on the return envelope.[10] The voter then mails or delivers the ballot to the county elections board.[11] Delivery is timely if received by the board of elections by 8:00 p.m. on Election Day.[12] When county boards of elections receive a mail-in ballot, the ballot's envelope is stamped with the date of receipt and logged into the Statewide Uniform Registry of Electors (SURE) system.[13]

The Lehigh County Board of Elections (LCBE) held an election on November 2, 2021, to fill vacancies for the office of Judge of the Court of Common Pleas of Lehigh County. Six candidates ran for three available judgeships. Candidates Thomas Caffrey and Thomas Capehart received the most votes and were sworn into office. During the counting of the ballots, the LCBE set aside 257 out of approximately 22,000 mail-in or absentee ballots that lacked a handwritten date next to the voter declaration signature. The LCBE also received four ballots with the date in the wrong location on the outer envelope and set those aside. It is undisputed that all of these ballots were received by the deadline of 8:00 p.m. on election day. As of November 15,

---

[6] 25 Pa. Cons. Stat. §§ 3146.2, 3150.12.

[7] Pa. Dep't of State, Guidance Concerning Examination of Absentee and Mail-In Ballot Return Envelopes at 2 (Sept. 11, 2020).

[8] JA 165.

[9] JA 166.

[10] 25 Pa. Cons. Stat. §§ 3146.6(a), 3150.16(a).

[11] *Id.*

[12] *Id.*

[13] *Id.* § 1222.

2021, candidate David Ritter received the third most votes in the election, which is seventy-four votes more than the candidate in fourth place, Zachary Cohen.

## II.    Procedural History

The LCBE convened a public hearing on November 15, 2021, to consider whether to count the disputed (i.e., undated) ballots. During the hearing, the chief clerk testified and offered his conclusion that the undated declaration ballots were not effective and should not be counted because the declaration on the outside envelope was undated. Similarly, the LCBE's solicitor testified that he understood that the Pennsylvania Department of State had advised that a dated declaration was required. There was also testimony that the LCBE "ha[d] decided to count ballots where voters provided their birthday dates."[14] The LCBE voted 3-0 to count the undated ballots.

On November 17, 2021, Ritter appealed with the Lehigh County Court of Common Pleas. An evidentiary hearing and oral argument followed. The trial court later issued an opinion and order on November 30, which affirmed the LCBE's decision to count the disputed ballots.

Ritter then appealed the trial court's decision to the Commonwealth Court of Pennsylvania. The court granted a stay pending to the Court of Common Pleas. That court prohibited the LCBE from opening and counting the disputed ballots. On January 3, 2022, the court issued its opinion and order, ultimately concluding that the undated ballots should not be counted. However, on January 27, the trial court entered an order, directing the LCBE to count the four misdated ballots but not the 257 undated ballots.[15]

On January 31, Plaintiffs Linda Migliori, Sergio Rivas, Richard Richards, Francis J. Fox, and Kenneth Ringer (Voters) sued the LCBE in the Eastern District of Pennsylvania. They argued that the LCBE's decision to not count their votes simply because they had not entered the date on the outside envelope violated their rights under the

---

[14] JA 254.

[15] The Supreme Court of Pennsylvania denied a petition for allowance of appeal by the LCBE on the same day. *Ritter v. Lehigh Cnty. Bd. of Election*, No. 9 MAL 2022, 2022 WL 244122 (Pa. Jan. 27, 2022).

Materiality Provision of the Civil Rights Act. Ritter and Cohen both intervened in the action, and the parties cross-moved for summary judgment.[16]

Voters are five individuals between the ages of 66 and 76 residing in Lehigh County. Some are Democrats and some are Republicans. They used mail-in ballots in the November 2021 county elections.[17] Their ballots, along with 252 other Lehigh County mail-in ballot voters,[18] were set aside and not counted merely because they did not write a date on the envelope.[19] We again note that it is undisputed that their ballots were received before the 8:00 p.m. deadline and the only thing that prevents their vote from being counted is the fact that they did not enter a date on the outside envelope.[20]

On March 16, 2022, the District Court granted the LCBE and Ritter's motions for summary judgment.[21] The Court held that there was no private right of action to enforce the Materiality Provision.[22] This expedited appeal followed.

### III.    Discussion[23]

As noted at the outset, we must determine whether the District Court erred in finding Voters have no right of action to enforce the Materiality Provision of the Civil Rights Act.

---

[16] *Migliori v. Lehigh Cnty. Bd. of Elections*, No. 5:22-cv-00397, 2022 WL 802159, at *1 (E.D. Pa. Mar. 16, 2022).

[17] *Id.*

[18] According to Cohen's campaign, of the disputed ballots the "average age of these voters was 71 at the time they voted. 224 of them were over 55 and 193 were over 65. Fifteen of the [d]isputed [b]allots came from voters over the age of 90, one of whom was 100 years old and another was 103 years old." JA 169.

[19] *Migliori*, 2022 WL 802159, at *1.

[20] As noted above, their votes would have been counted if they had entered any date, even an obviously incorrect one.

[21] *Migliori*, 2022 WL 802159, at *15.

[22] *Id.*

[23] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment de novo. *Tundo v. County of Passaic*, 923 F.3d 283, 286 (3d Cir. 2019). We also review a district court's legal conclusions de novo. *Acierno v. Cloutier*, 40 F.3d 597, 609 (3d Cir. 1994) (en banc).

We conclude that it did and reverse. We hold that Voters may enforce the Materiality Provision of the Civil Rights Act (52 U.S.C. § 10101(a)(2)(B)) by an action brought under 42 U.S.C. § 1983. Accordingly, we need not decide whether Congress also intended to create an implied right of action.[24]

## 1. Enforcement Via 42 U.S.C. § 1983[25]

In *Gonzaga University v. Doe*, the Supreme Court held that a federal statute that unambiguously confers an individual right is presumptively enforceable by private plaintiffs via § 1983.[26] Accordingly, to determine whether a federal statute is enforceable by private plaintiffs via § 1983, we must first ask "whether Congress intended to create a federal right."[27] If a federal right is found, we then ask

---

[24] Moreover, this matter is expedited and comes before us on cross motions for summary judgment. There are no genuine disputes of material fact for the District Court to resolve. We will resolve the underlying legal issues in the interest of judicial economy rather than remanding the case back to the District Court for a legal ruling that could result in further delay and an additional appeal. *See Hudson United Bank v. LiTenda Mortg. Corp.* 142 F.3d 151, 159 (3d Cir. 1998).

[25] Appellees argue that Voters waived whether they could enforce the Materiality Provision via § 1983 because it "was not developed below." Appellee Ritter Br. at 33; *see also* Appellee LCBE Br. at 9. Though they describe the issue as waiver, it is unclear whether the Appellees are really making a forfeiture argument here because they contend that Voters at no point adequately developed this argument below. *See Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017) ("The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. '[F]orfeiture is the failure to make the timely assertion of a right [;] waiver is the 'intentional relinquishment or abandonment of a known right.'" (alterations in original)). Regardless, we find this argument unpersuasive as Voters clearly pled that they were asserting their claims through § 1983 throughout their complaint.

[26] 536 U.S. 273, 284 (2002).

[27] *Id.* at 283 (emphasis omitted).

whether defendants rebutted the presumption that it can be enforced in an action under § 1983.[28]

The District Court found that the Materiality Provision unambiguously confers a personal right because it "places '[a]ll citizens' qualified to vote at the center of its import and provides that they 'shall be entitled and allowed' to vote."[29] We agree.

Accordingly, we need only decide if Appellees rebutted the presumption that this right is enforceable under § 1983. A defendant can rebut the presumption but only by "showing that Congress 'specifically foreclosed a remedy under § 1983.'"[30] The presumption is generally only rebutted in exceptional cases.[31] To rebut the presumption, a defendant must point to either "specific evidence from the statute itself" or "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."[32] Appellees cannot establish either.

The text of § 10101 does not preclude a § 1983 remedy, and neither Appellee argues that it does. Specifically, § 10101(d) explains that federal courts "shall have jurisdiction of proceedings instituted pursuant to this section and shall exercise the same without regard to whether the party aggrieved shall have exhausted any administrative or other remedies."[33] Thus, this section specifically contemplates an aggrieved party (i.e., private plaintiff) bringing this type of claim in court. It does not shut the door on the mechanisms by which a party may pursue enforcing their right under the statute.

Nor does § 10101 include a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983 and therefore indicative of a congressional intent to foreclose a private right of action. The Supreme Court has found that statutory enactments preclude private enforcement actions pursuant to § 1983 in very few instances. In doing so, the Court "ha[s] placed primary

---

[28] *See id.*

[29] *Migliori*, 2022 WL 802159, at *10 (alteration in original).

[30] *Gonzaga*, 536 U.S. at 284 n.4 (citing *Smith v. Robinson*, 468 U.S. 992, 1004–05 n.9 (1984)).

[31] *Livadas v. Bradshaw*. 512 U.S. 107, 133 (1994).

[32] *Gonzaga*, 536 U.S. at 284 n.4.

[33] 52 U.S.C. § 10101(d).

emphasis on the nature and extent of that statute's remedial scheme."[34] In *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, the Court discussed how the relevant statute both provided "a panoply of enforcement options, including noncompliance orders, civil suits, and criminal penalties" for the agency's use and authorized "private persons to initiate enforcement actions" in several provisions.[35] The Court thus concluded it was "hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies."[36] In *Smith v. Robinson*, the Court explained how "the review scheme in the [statute] permitted aggrieved individuals to invoke 'carefully tailored' local administrative procedures followed by federal judicial review."[37] The Court explained "that Congress could not possibly have wanted [individuals] to skip these procedures and go straight to court by way of § 1983."[38]

Appellees argue that the inclusion of a right of action for the United States precludes a right of action for private plaintiffs.[39] It is true that the statute refers to the Attorney General's enforcement ability.[40] But this is distinguishable from the agency authorizations recognized in *Sea Clammers*. Here, as Intervenor-Appellee Ritter concedes, "the Attorney General's enforcement authority is not made exclusive."[41] Nor does this statute include an express provision for only specific situations for which private suits are authorized. Whereas in *Sea Clammers*, because the statute expressly authorized citizen suits in specific provisions, the Court could not assume that Congress intended to authorize additional judicial remedies for private citizens where it was not

---

[34] *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 253 (2009).

[35] *Blessing v. Freestone*, 520 U.S. 329, 347 (1997) (citing *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n.*, 453 U.S. 1, 13–14, 20 (1981)).

[36] *Id.*

[37] *Id.* (quoting *Smith v. Robinson*, 468 U.S. 992, 1009 (1984)).

[38] *Id.* (citing *Smith*, 468 U.S. at 1011).

[39] *See* Appellee Ritter Br. at 38–39; Appellee LCBE Br. at 12.

[40] *See* 52 U.S.C. § 10101(c).

[41] Appellee Ritter Br. at 39.

expressly stated.[42] Because the statute here does not contain this type of limiting provision and the Attorney General's enforcement authority is not exclusive, the presumption of a private right of enforcement under § 1983 is simply not rebutted.

Moreover, this case is also distinguishable from *Smith*. Unlike in *Smith*, this statute does not provide for "aggrieved individuals to invoke 'carefully tailored' local administrative procedures."[43] Instead, as mentioned above, the statute expressly gives aggrieved parties direct access to the federal courts "without regard to whether the party aggrieved shall have exhausted any administrative or other remedies."[44] This reinforces our conclusion that the presumption of a private right of action under § 1983 is not rebutted. [45]

In holding that there was no private right to enforce the Materiality Provision of the Civil Rights Act, the District Court concluded that under *Wisniewski v. Rodale, Inc.*, the Attorney General's authority to enforce § 10101 is inconsistent with a private remedy and therefore rebuts the presumption that arises under *Gonzaga*.[46] However, *Wisniewski* involved an implied right of action that did not implicate § 1983.[47] Moreover, for reasons we do not understand, the District Court neither cited § 1983 nor

---

[42] *Sea Clammers*, 453 U.S. at 14–15.

[43] *Blessing*, 520 U.S. at 1363 (quoting *Smith*, 468 U.S. at 1009).

[44] 52 U.S.C. § 10101(d).

[45] The Court also found that a statute precluded § 1983 claims in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005). Intervenor-Appellee Ritter relies on this case as support for whether the presumption was rebutted here. His reliance is misguided, however, as that case found the relevant statute precluded § 1983 claims because Congress expressly narrowed the availability of privately enforceable judicial remedies. *Id.* at 121. Whereas here, the statute does not provide for a limited private remedial scheme.

[46] *Migliori*, 2022 WL 802159, at *10.

[47] *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007).

engaged in *Gonzaga*'s two-part test.[48] Moreover, *Wisniewski* is readily distinguishable because it involved comprehensive administrative proceedings, including a provision that allowed an administrative agency to bring civil suits. Section 10101(c) only provides for suits by the Attorney General. It does not establish a cause of action for private individuals. When Congress added a provision for civil enforcement by the Attorney General,[49] it acknowledged that private individuals had enforced the substantive rights in § 10101(a) via § 1983 for nearly a century.[50] Moreover, it did not make the Attorney General's enforcement mandatory.[51]

Finally, the mere existence of a public remedy by the Attorney General is inadequate, without more, to rebut the presumption of a private right of action under § 1983.[52] "[T]he existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which . . . an action would lie under § 1983 and those in which . . . it would not."[53] And here, § 10101 "contains no express private remedy, much less a more restrictive one."[54]

---

[48] The District Court applied only the implied right of action framework under *Alexander v. Sandoval*, 532 U.S. 275 (2001). *Migliori*, 2022 WL 802159, at *12–13. Under this test, an implied right of action exists if "a statute . . . manifest[s] Congress's intent to create (1) a personal right, and (2) a private remedy." *Three Rivers Ctr. for Indep. Living v. Housing Auth. of City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004) (citing *Sandoval*, 532 U.S. at 286). The District Court did cite *Gonzaga* in answering the first prong of this test, but that is because both the § 1983 analysis under *Gonzaga* and the implied right of action analysis under *Sandoval* begin with this question. *See Migliori*, 2022 WL 802159, at *12. As stated above, because we need not decide whether Congress also intended to create an implied right of action, we need not engage with the test under *Sandoval*.

[49] 52 U.S.C. § 10101(c).

[50] H.R. REP. No. 85-291, at 1977 (1957).

[51] 52 U.S.C. § 10101(c) ("[T]he Attorney General *may* institute for the United States . . . a civil action . . . ." (emphasis added)).

[52] See Fitzgerald, 555 U.S. at 256.

[53] *Id.* (first omission in original)

[54] *Id.*

Accordingly, for all the reasons stated above, we find that Appellees have failed to rebut the presumption of an enforceable right under § 1983. We therefore hold that private plaintiffs may enforce the Materiality Provision via § 1983, and the District Court erred in finding that Voters have no right of action.

## 2. Materiality[55]

Because we find that private plaintiffs may enforce the Materiality Provision via § 1983, we now turn to whether the LCBE's refusal to count Voters' ballots for omitting the date violates this provision.[56] To answer this query, we must ask

---

[55] Intervenor-Appellee Ritter has argued that Voters claim is barred under the doctrine of laches. Appellee Ritter Br. at 22. We review a decision about the doctrine of laches for abuse of discretion. *Kars 4 Kids, Inc. v. America Can!*, 8 F.4th 209, 219 n.10 (3d Cir. 2021). This argument is unavailing and merits only the briefest of discussion because Voters timely filed their complaint. We thus do not find that the District Court abused its discretion in concluding that "Ritter has failed to established Plaintiffs engaged in inexcusable delay in the filing of this matter." *Migliori*, 2022 WL 802159, at *7. We also reject Ritter's argument that Voters lack Article III standing for the remedy they seek. Ritter confuses standing for scope of remedy, which is non-jurisdictional and thus subject to forfeiture. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017). Because this argument was not raised below, it is forfeited.

[56] The Materiality Provision applies to any "record or paper relating to any application, registration, or other act requisite to voting." § 10101(a)(2)(B). We find that the mail-in ballot squarely constitutes a paper relating to an act for voting. We reject Appellees' argument that the Materiality Provision does not apply here because the provision applies only to instances of racial discrimination and voter registration. Appellee Ritter Br. at 44, 46. When interpreting a statute, we first start with the plain meaning of the language. *Mitchell v. Horn*, 318 F.3d 523, 535 (3d Cir. 2003). If the plain meaning is "unambiguous, then the first [step] is also the last." *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.D. 249, 253–54

whether this requirement is material in determining whether such individual is qualified to vote under Pennsylvania law. In Pennsylvania, a voter is qualified if, by Election Day, "they are 18 years old, have been a citizen for at least one month, have lived in Pennsylvania and in their election district for at least thirty days, and are not imprisoned for a felony conviction."[57] In other words, the requirement is material if it goes to determining age, citizenship, residency, or current imprisonment for a felony.

Appellees cannot offer a persuasive reason for how this requirement helped determine any of these qualifications.[58] And we can think of none. Appellees try to make several reaching arguments. None of which we find persuasive. For example, Appellees argue that the date confirms a person is qualified to vote from their residence since a person may only vote in an election district s/he has resided in for at least thirty days before the election and one's residency could change in a matter of days.[59] It is unclear how this date would help determine one's residency, but even supposing it could, this argument assumes the date on the envelope is correct. However, the LCBE counted ballots with obviously incorrect dates.[60]

Intervenor-Appellee Ritter also argues that the date requirement is "material in determining an elector's qualification to vote in future elections" because a voter found guilty of knowingly signing a voter declaration that is false is not allowed to vote for four years.[61] This argument is

---

(1992)). Here, the text of the provision does not mention racial discrimination and includes "other act[s] requisite to voting" in a list alongside registration. Thus, we cannot find that Congress intended to limit this statute to either instances of racial discrimination or registration.

[57] 25 Pa. Cons. Stat. §§ 1301(a), 2811.

[58] *See* Appellee Ritter Br. at 49–50.

[59] *Id.* at 50.

[60] The Deputy Secretary for Elections & Commissions sent an email on behalf of the Pennsylvania Department of State reminding counties that "there is no basis to reject a ballot for putting the 'wrong' date on the envelope, nor is the date written used to determine the eligibility of the voter. You should process these ballots normally." JA 192.

[61] Appellee Ritter Br. at 54.

particularly unpersuasive. Under the provision, materiality is limited to errors or omissions determining qualification "to vote in *such* election," not future elections.[62]

Intervenor-Appellee Ritter also claims that the date requirement "serves a significant fraud-deterrent function" and "prevents the tabulation of potentially fraudulent back-dated votes."[63] Even if this is true, the provision is clear that an "error or omission is not material" unless it serves to "determin[e] whether such individual is qualified under State law to vote in such election."[64] Fraud deterrence and prevention are at best tangentially related to determining whether someone is qualified to vote. But whatever sort of fraud deterrence or prevention this requirement may serve, it in no way helps the Commonwealth determine whether a voter's age, residence, citizenship, or felony status qualifies them to vote. It must be remembered that all agree that the disputed ballots were received before the 8:00 p.m. deadline on Election Day. It must also be remembered that ballots that were received with an erroneous date were counted. We are at a loss to understand how the date on the outside envelope could be material when incorrect dates—*including future dates*—are allowable but envelopes where the voter simply did not fill in a date are not. Surely, the right to vote is "made of sterner stuff" than that.

Ironically even the LCBE—the main defendant in this case—at first agreed that the omissions were immaterial.[65] The nail in the coffin, as mentioned above, is that ballots were only to be set aside if the date was *missing*—not incorrect. If the substance of the string of numbers does not matter, then it is hard to understand how one could claim that this requirement has any use in determining a voter's qualifications. As Voters persuasively argue, "[t]he fact that anything that looks like a date, including a date from decades past or future, is acceptable highlights why the handwritten-envelope date cannot be material to accurately assessing anything." Moreover, the Deputy Secretary for Elections & Commissions explicitly stated that the date is not used "to

---

[62] 52 U.S.C. § 10101(a)(2)(B) (emphasis added).

[63] Appellee Ritter Br. at 55.

[64] 52 U.S.C. § 10101(a)(2)(B).

[65] *Migliori*, 2022 WL 802159, at *3 ("[T]he LCBE voted unanimously to count the disputed ballots.").

determine the eligibility" (i.e., qualifications) of a voter.[66] This, without more, slams the door shut on any argument that this date is material.

Upon receipt, the LCBE timestamped the ballots, rendering whatever date was written on the ballot superfluous and meaningless. It was not entered as the official date received in the SURE system, nor used for any other purpose. Appellees have offered no compelling reasons for how these dates—even if correct, which we know they did not need to be—help determine one's age, citizenship, residency, or felony status. And we can think of none. Thus, we find the dating provisions under 25 Pa. Cons. Stat. §§ 3146.6(a) and 3150.16(a) are immaterial under the Materiality Provision.

All five Voters were qualified to vote in Lehigh County when they submitted their mail-in ballots and submitted their ballots on time. Accordingly, because their omissions of the date on their outside envelopes is immaterial to determining their qualifications, the LCBE must count their ballots. Otherwise, the LCBE will violate the Materiality Provision by denying Voters their right to vote based on an omission immaterial to determining their qualifications to vote.

## IV.    Conclusion

Congress intended § 1983 to be a channel for private plaintiffs to enforce the Materiality Provision of the Civil Rights Act. That provision was created to ensure qualified voters were not disenfranchised by meaningless requirements that prevented eligible voters from casting their ballots but had nothing to do with determining one's qualifications to vote. Ignoring ballots because the outer envelope was undated, even though the ballot was indisputably received before the deadline for voting serves no purpose other than disenfranchising otherwise qualified voters. This is exactly the type of disenfranchisement that Congress sought to prevent.

Accordingly, we find the dating provisions in 25 Pa. Cons. Stat. §§ 3146.6(a) and 3150.16(a) are immaterial under § 10101(a)(2)(B). There is no basis on this record to refuse to count undated ballots that have been set aside in the November 2, 2021, election for Judge of the Common Pleas

---

[66] JA 192.

of Lehigh County. We will thus remand this matter to the District Court and direct that Court to enter an order that the undated ballots be counted.

MATEY, *Circuit Judge*, concurring in the judgment.

Much about this case is not disputed. And given the lack of genuine disagreement on key questions, I agree that the Appellants can enforce the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), under 42 U.S.C. § 1983.

For one, the Appellees did not challenge the argument that § 10101(a)(2)(B) creates an individual federal right.[1] At all.[2] That is significant because "[o]nce a plaintiff demonstrates

---

[1] We have held that a statute creates a personal right when it satisfies all three of *Blessing v. Freestone*'s factors: "First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States . . . [i.e., it] must be couched in mandatory, rather than precatory, terms." *Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Port Auth. of N.Y. & N.J.*, 730 F.3d 252, 254 (3d Cir. 2013) (alteration in original) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997)). The statute must also use "rights-creating language," *Lewis v. Alexander*, 685 F.3d 325, 345 (3d Cir. 2012) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002)), and focus on the individuals protected, not the entity regulated, *N.J. Primary Care Ass'n v. N.J. Dep't of Hum. Servs.*, 722 F.3d 527, 538 (3d Cir. 2013) (citing *Gonzaga*, 536 U.S. at 287–90).

[2] At oral argument, Ritter conceded that the Materiality Provision contains rights-creating language, Oral Arg. at

that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 183 n.7 (3d Cir. 2004) (quoting *Gonzaga*, 536 U.S. at 284).

For another, the Appellees offered no evidence, and little argument, that the date requirement for voter declarations under the Pennsylvania Election Code, 25 Pa. Cons. Stat. §§ 3146.6(a), 3150.16(a), is material as defined in § 10101(a)(2)(B). Instead, they agree that no party contests that voter declarations with inaccurate dates were counted in this election.[3] Add up both concessions, and the Appellees have little room left to defend the District Court's decision.

But more room may exist in a future contest, and just because a statute is *sometimes* ignored does not mean the

---

55:28–55:49, and the Lehigh County Board of Elections agreed with all parts of Ritter's argument, Oral Arg. at 1:01:09–1:01:12. And "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *See Wright v. Spaulding*, 939 F.3d 695, 704 (6th Cir. 2019) (alteration in original) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.)).

[3] Which follows the current guidance of the Pennsylvania Department of State that "there is no basis to reject a ballot for putting the 'wrong' date on the envelope, nor is the date written used to determine the eligibility of the voter. You should process these ballots normally." (App. at 79, 192.) This guidance was confirmed by members of the Lehigh County Board of Elections who stated they would even count ballots with birthdates written instead of the date the voter signed the declaration. (App. at 254–55.)

statute is *always* immaterial. Administrative guidance, particularly on the process of counting ballots, has been known to fluctuate. Perhaps the Commonwealth will change its rules raising fresh facts and unforeseen outcomes in a different race. Note, too, the importance of the time- and date-stamped ballots here produced by the SURE system.[4] A system that, despite its name, could fail or freeze, or just run out of funding down the road.[5] Surely, the lack of that evidence might form a different case and controversy, one where the materiality of the date on the voter declaration might make a difference.

Those questions are for tomorrow. Today, it is enough to conclude, as the majority does, that the Appellees have explained no material issues left for litigation. For that reason, I concur in the Judgment.

---

[4] 25 Pa. Cons. Stat. § 1222 (establishing Pennsylvania's electronic voter registration system, the SURE system, to be implemented by regulations from the Commonwealth's Department of State).

[5] Indeed, the only regulation that requires "[r]eturned absentee ballots [to] be immediately stamped showing the time and date of receipt" makes no mention of the SURE system. 4 Pa. Code § 171.14(a).