**Nos. 22-1499**
**25-2650**
**25-2761**

# In the United States Court of Appeals for the Third Circuit

LINDA MIGLIORI, et al.,

Plaintiffs-Appellees/Cross-Appellants,

v.

LEHIGH COUNTY BOARD OF ELECTIONS, et al.,

Defendants-Appellants/Cross-Appellees.

On Appeal from the Eastern District of Pennsylvania
(D.C. Civ. Action No. 5:22-CV-00397)
District Judges: The Honorable Joseph F. Lesson, Jr. and The Honorable Jeffrey L. Schmel

Brief filed on behalf of Lehigh County Board of Elections, Appellee

Joshua S. Mazin
Lucas J. Repka
REPKA MAZIN, LLC
108 East Center Street
Nazareth, Pennsylvania 18064
Phone: 610.365.2670
Fax: 610.365.2672
josh@repkamazinlaw.com
lucas@repkamazinlaw.com

Counsel for Appellees, Lehigh County Board of Elections

November 12, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................ii

INTRODUCTION ..........................................................................1

STATEMENT OF ISSUES ..................................................................3

STATEMENT OF RELATED CASES ......................................................4

STATEMENT OF THE CASE ..............................................................5

SUMMARY OF ARGUMENT ..............................................................8

ARGUMENT ..............................................................................10

CONCLUSION ............................................................................28

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979)……………………………………………………13

*Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir. 1989)……………………....…18

*Black Grievance Committee v. Philadelphia Electric Co.*,
802 F.2d 648 (3d Cir.1986), *vaca ted on other grounds*,
483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987)………………………………………….20

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 1996 WL 741885…………………………….20

*Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human
Resources*, 532 U.S. 598, 603 (2001)…………………………………………………………….10

*Camreta v. Greene*, 563 U.S. 692, 712 & n.10 (2011)…………………………………………….13

*Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking*, LLC,
476 F. App'x 198, 203 (11th Cir. 2012)……………………………………………………...…..24

*Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir. 1976)…………………………………15

*Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*,
421 F.3d 417, 422 (6th Cir. 2005)…………………………………………………………...…..15

*Farrar v. Hobby*, 506 U.S. 103, 111 (1992)…………………………………………………....…11

*Hanrahan* v. *Hampton*, 446 U.S. 754, 756 (1980) (*per curiam*)………………………………….11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)…………………………………………......10, 18, 19, 20

*Hewitt v. Helms*, 482 U.S. 755, 760 (1987)…………………………………………………...…11

*Interfaith Community. Organization v. Honeywell Int'l Inc.*, 426 F.3d 694, 699…………..…25, 26

*In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*,
241 A.3d 1058 (Pa. 2020)…………………………………………………………………...…5, 6, 15

*In re Rite Aid*, 396 F.3d 294 at 305 (3r Cir. 2005)…………………………………………..19

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985)……………………………………………..…11

*Lackey v. Stinnie*, 604 U.S. 192 (2025)……………………………………………1, 8, 12, 13, 14

*Maher v. Gagne*, 448 U.S. 122, 129 (1980)……………………………………………....11

*Maldonado v. Houstoun*, 256 F.3d 181, 187-188 (3d Cir. 2001)…………………………....25

*Martinez v. Hernando Cty. Sheriff's Office,* 579 F. App'x 710, 714 (11th Cir. 2014)………...19

*Migliori v. Cohen*, 36 F.4th 153 (3d. 2022), *certiorari granted,*
*and judgment vacated by Ritter v. Migliori*, 143 S.Ct. 297 (U.S. 2022)………………………..4

*Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968)…………………………….....11

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)………..18

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)…………………………………….....19

*Rainey v. Philadelphia Housing Authority*, 832 F. Supp. 127, 129 (E.D. Pa. 1993)…………....25

*Ritter v. Lehigh County Board of Elections*, 2022 WL 16577
(Pa. Cmwlth., No. 122 CD 2021, filed Jan. 3, 2022), *appeal denied*,
271 A.3d 1285 (Pa. 2022)……………………………………………………………...4, 6

*Rode v. Dellarciprete*, 892 F.2d 1177 (3r. Cir. 1990)…………………………………....18, 19

*Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir.1997)…………………………….19

*Sole v. Wyner*, 551 U.S. 74, 83 (2007)……………………………………………....10, 11, 13, 14

*Texas State Teachers Assn. v. Garland Independent School Dist.*,
489 U.S. 782, 792-793 (1989)……………………………………………………………10

*Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159 (3d. Cir. 2022)……………………………....11

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)…………………………………….....13

*Ward v. Phila. Parking Auth.*, 634 F. App'x 901, 906 (3d Cir. 2015)……………………….14

*Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035
(citing *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984)……………………………………25

**FEDERAL STATUTES**

42 U.S.C. §1983………………………………………………………………………10

42 U.S.C. §1988……………………………………………………………….…6, 7

52 U.S.C. §10101(a)(2)(B)………………………………………………………..….6

# INTRODUCTION

The Lehigh County Board of Elections ("Board") respectfully requests this Court reverse the District Court's Opinion and Order that granted Linda Migliori, Francis J. Fox, Richard E. Richards, Kenneth Ringer, and Sergio Rivas (represented by the American Civil Liberties Union ("ACLU") (collectively, "Plaintiffs") Motion for Attorney's Fees. For several reasons, the District Court's award of attorney fees that exceed three-hundred and sixty-five thousand dollars ($365,000.00) to Plaintiffs and against Lehigh County ("County") was in error.

First and foremost, the District Court erred as a matter of law in determining Plaintiffs were "prevailing parties" entitled to an award of attorney fees. Specifically, the temporary relief obtained by Plaintiffs before this Honorable Court—the only Court to afford any relief—which was subsequently nullified by the U.S. Supreme Court vacating that determination and dismissing the case as moot, was not sufficiently enduring to qualify Plaintiffs as prevailing parties. *See Lackey v. Stinnie*, 604 U.S. 192 (2025)

In addition, the unique nature of the litigation renders any type of attorney fees award unjust. Where, as here, special circumstances exist that created new law, resulted in differing interpretations of the law by Pennsylvania State and Federal Courts, and the action complained of was at the express direction of the Pennsylvania Department of State and enforceable Orders of the Pennsylvania State Courts, the Board should not be penalized in the form of a monetary award. As a result, even if Plaintiffs are deemed prevailing parties—which they were not—Plaintiff's attorney fees must not be imposed on the Board as a matter of law.

Lastly, even if an award of attorney fees is deemed appropriate—which it should not be—the lodestar considerations are such that any award should be reduced to zero, or at best, a nominal

amount. Indeed, a careful review of the attorney fees sought reveals that they are unreasonable and unjust, especially because this case did not involve a trial or even a single evidentiary hearing.

In sum, the complex procedural and substantive history of the instant litigation, coupled with a final result that vacated the temporary relief obtained by Plaintiffs and dismissed the case as moot and resulted in costs being taxed to Plaintiffs, renders any award of attorney fees is unreasonable, excessive, and unnecessary.

As more fully set forth below, the Board respectfully submits an award of attorney fees in this matter is legally improper, factually unsupported, and equitably unjustifiable.

## STATEMENT OF ISSUES

A.      Whether Plaintiffs are prevailing parties and thereby entitled to an award of attorney fees.

     *Suggested Answer:*     *No.*

B.      Whether special circumstances exist that render an award of attorney fees improper based on the facts presented.

     *Suggested Answer:*     *Yes.*

C.      Whether Plaintiff's request for attorneys' fees—which was already reduced by the District Court by approximately 30% of the amount requested—is reasonable.

     *Suggested Answer:*     *No.*

## STATEMENT OF RELATED CASES

The underlying suit here—which involves this Honorable Court's Order requiring the Board to count undated mail-in ballots in the November 2021 Election—was vacated by the U.S. Supreme Court and remanded to this Court with instructions to dismiss the case as moot. *See Migliori v. Cohen*, 36 F.4th 153 (3d. 2022), *certiorari granted, and judgment vacated by Ritter v. Migliori*, 143 S.Ct. 297 (U.S. 2022).

In addition, the mail-in ballots at issue in that appeal were also considered in a prior state court action, *see Ritter v. Lehigh County Board of Elections*, 2022 WL 16577 (Pa. Cmwlth., No. 122 CD 2021, filed Jan. 3, 2022), *appeal denied*, 271 A.3d 1285 (Pa. 2022), which was a matter brought by a state judicial candidate under the Pennsylvania Election Code. Of note, while the state action was brought under the Pennsylvania Election Code, the Commonwealth Court did address the Materiality Provision of the Civil Rights Act in its decision. The final determination of the Pennsylvania State Courts was that the undated mail-in ballots not be counted.

## STATEMENT OF THE CASE

Plaintiffs" filed the instant litigation seeking to have the Lehigh County Board of Elections ("Board") count their mail-in ballots, which lacked the required date on the ballot-return envelope. A quick summation of the historical and procedural posture of this matter, in conjunction with the related state litigation is important for purposes of disposition of the request for attorney fees.

In the November 2021 Election, Zachary Cohen, formerly intervenor-Plaintiff, was running for a position on the Court of Common Pleas of Lehigh County against David Ritter, formerly intervenor-Defendant, among others. Consistent with the instructions and direction of the Pennsylvania Department of State, coupled with the Pennsylvania Supreme Court Opinion in *In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020), the Chief Clerk to the Board deemed mail-in ballots without a date on the ballot-return envelope invalid.

As the race between Cohen and Ritter was very close, Cohen challenged the Chief Clerk's decision to set aside the mail-in ballots. ***Of significant import here, following a hearing, the Board voted 3-0 to canvass, i.e., count the mail-in ballots***. Two days later, David Ritter filed an appeal to the Court of Common Pleas of Lehigh County.

Following a hearing and the submission of briefs on all issues raised, including an issue concerning the Materiality Provision of the Civil Rights Act, the Court of Common Pleas issued a decision affirming the Board's decision to count all 261 mail-in ballots. Ritter then filed an appeal to the Commonwealth Court of Pennsylvania.

Ultimately, the Commonwealth Court reversed the decision of the Court of Common Pleas, concluding the mail-in ballots should not be counted. In so doing, the Commonwealth Court addressed the Materiality Provision of the Civil Rights Act and relied on the Pennsylvania

Supreme Court's decision in *In re Canvass 2020*. Zachary Cohen then filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied. *Ritter v. Lehigh County Board of Elections*, 271 A.3d 1285 (Pa. 2022).

Following the Pennsylvania Supreme Court's decision not to hear the case, the Commonwealth Court's decision on the merits required that the Board that the mail-in ballots lacking a date were not to be counted by the Board.

However, before the Board could certify the election, Plaintiffs, with the assistance of the ACLU, filed a complaint in this Court. Given the published position of the Department of State, the Commonwealth Court's decision, and the Pennsylvania Supreme Court's decision not to hear the case, the Board took the position to this Court that the ballots should not be counted. The District Court ultimately granted summary judgment in favor of the Board. However, this Honorable Court reversed that decision, concluding that disqualification of the ballots for the missing date violated the Materiality Provision of the Civil Rights Act, 52 U.S.C. §10101(a)(2)(B).

Ritter appealed that decision to the United States Supreme Court and filed an emergency petition for stay. The Board joined the appeal, but because a stay was denied by the United States Supreme Court, this Court entered judgment in favor of Plaintiffs and ordered the ballots be counted. Consistent with that Order, the Board counted the votes and certified the election results.

Thereafter, the United States Supreme Court granted *certiorari*, vacated the Order of this Court, and remanded the matter to the Third Circuit with instructions to dismiss the case as moot, which it did.

Plaintiffs then filed a Motion for Attorney's Fees, arguing that—despite the vacatur and dismissal of their appeal as moot—they are entitled to reasonable attorney's fees under 42 U.S.C. §1988 for the underlying litigation. Plaintiffs sought a total attorney fee award of $516,136.50.

The District Court determined Plaintiffs were "prevailing parties" under 42 U.S.C. §1988, but it deferred rendering a final decision on the Motion, requesting supplemental briefing on the issue of whether the Plaintiffs' request for attorney fees was reasonable.

Ultimately, the District Court awarded Plaintiffs $368,336.50—a reduction of $147,800, (or about 30%). The Board appealed to this Court. Plaintiffs filed a cross-appeal. The Board now files the instant Brief in Opposition to the award of attorney fees.

## SUMMARY OF ARGUMENT

On February 25, 2025—nearly two years after the District Court here decided that Plaintiffs are "prevailing parties" entitled to an award of attorney fees—the United States Supreme Court held: "[A] plaintiff 'prevails' under the statute *when a court conclusively resolves a claim by granting enduring judicial relief on the merits* that materially alters the legal relationship between the parties." *Lackey*, 604 U.S. at 203-04 (emphasis added).

Here, as in *Lackey*, in the underlying litigation, Plaintiffs did not obtain an *enduring* change in the legal relationship between the parties *that was judicially sanctioned*. Indeed, the ephemeral relief obtained by Plaintiffs here—temporary equitable relief from this Court—was later vacated by the United States Supreme Court and, therefore, does not constitute enduring change that was judicially sanctioned. In vacating the Order of this Court, the United States Supreme Court, within its discretion, nullified Plaintiffs' relief and remanded to this Court to dismiss the case as moot. The Supreme Court could have dismissed this case as moot *without* vacating this Court's Order, but it chose not to do so. The Court's action signifies that it did not intend for the relief obtained by Plaintiffs to be enduring by judicial sanction. Thus, Plaintiffs here cannot be considered prevailing parties entitled to an award of attorneys' fees as a matter of law.

Moreover, even if Plaintiffs were properly deemed prevailing parties—which they are not—the unique nature of the underlying litigation renders any award of attorney fees unjust. Where special circumstances exist—primarily that the Board (*which originally voted to count the undated mail-in ballots*) was subject to competing mandates not to count the ballots by the Pennsylvania State Courts (and the Pennsylvania Department of State) and to count the ballots by this Court—the Board, a local governmental entity, should not be penalized in the form of an award.

Lastly, if a fee award is deemed appropriate, which it should not, the lodestar considerations are such that any award should be reduced to zero, or at best, a nominal amount. To that end, a careful review of the fees claimed by Plaintiffs reveals that they are unreasonable, excessive, and unnecessary.

**ARGUMENT**

While the Board acknowledges that 42 U.S.C. §1988 permits the recovery of reasonable attorney fees where a plaintiff is a prevailing party on a claim or claims brought under Section 1983, 42 U.S.C. §1983, Plaintiffs here are not properly deemed prevailing parties. Moreover, even if considered prevailing parties, which they are not, the facts here preclude such an award. Finally, even if an award is determined appropriate, which it should not, the fees sought hereare not reasonable. Each of these legal issues are addressed, in turn, below.

A.    <u>Plaintiffs are not prevailing parties entitled to an award of attorney fees under Federal Law.</u>

Section 1988 of the Civil Rights Act, 42 U.S.C. §1988, provides that in federal civil rights actions "the court, *in its discretion*, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Hensley v. Eckerhart*, 461 U.S. 424 (1983) (emphasis added). However, that Section does not define the term "prevailing party." Therefore, an examination of caselaw is required.

Initially, to be eligible for prevailing party status, a plaintiff must have "been awarded some relief by the court." *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 603 (2001). "The touchstone of the prevailing party inquiry [is] the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 83 (2007); *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792-793 (1989); *see also Buckhannon* (precedent "counsel[s] against holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties"). "[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity *or on the merits*, Section 1988 does not

authorize a fee award against that defendant." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (emphasis added).

Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, *Hewitt v. Helms*, 482 U.S. 755, 760 (1987), or comparable relief through a consent decree or settlement, *Maher v. Gagne*, 448 U.S. 122, 129 (1980).

In short, a plaintiff "prevails" when actual relief *on the merits* of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Farrer*. Where relief is legally imposed on the merits, attorney fees can be imposed, within the Court's discretion, unless special circumstances (such as those that exist here) render such an award unjust. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968); *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159 (3d. Cir. 2022). However, a party does not qualify as a "prevailing party" when a court of appeals overturns directed verdicts and discovery orders entered against him, see *Hanrahan* v. *Hampton*, 446 U.S. 754, 756 (1980) (*per curiam*).

Nevertheless, the settlement of a dispute or the judicially obtained relief on the merits obtained *cannot be ephemeral*. *Sole*. To qualify as a prevailing party where relief is granted at some prior stage of the litigation, the relief must not have been "reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole*, 551 U.S. at 83. In *Sole*, the plaintiff obtained a preliminary injunction, but then lost on the merits and a judgment was entered against her. In concluding plaintiff was not a prevailing party, the Supreme Court noted the plaintiff had "won a battle but lost the war." *Id.* at 86.

11

Earlier this year—about two years after the District Court's Opinion that determined Plaintiffs were prevailing parties here—the U.S. Supreme Court held that a party who receives a preliminary injunction, *and whose case becomes moot before the Court reaches a final judgment*, does not count as a prevailing party under Section 1988. *See Lackey v. Stinnie*, 604 U.S. 192 (2025). In *Lackey*, a Virginia law required state courts to suspend the licenses of drivers who did not pay court fines. A group of drivers challenged the law, and the District Court preliminarily enjoined its enforcement. The Virginia General Assembly then repealed the statute before the District Court reached a final judgment, which mooted the underlying case. Nevertheless, the drivers sought attorney fees.

Ultimately, the Supreme Court rejected the drivers' claim for attorney fees. A plaintiff "prevails," the Court explained, "when a court conclusively resolves a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties." *Id.* at 203-04. A plaintiff who receives a preliminary injunction before the case becomes moot does not fit the bill, it concluded. A preliminary injunction, the Court explained, reflects only "temporary success at an intermediary stage of the suit," not enduring relief based on a conclusive determination that the plaintiff won, and not relief that changes the relationship between the parties. *Id.* at 201 (quotation omitted). The Court explained:

> Today, we establish that the enduring nature of that change must itself be judicially sanctioned. A plaintiff who wins a transient victory on a preliminary injunction does not become a 'prevailing party' simply because external events convert the transient victory into a lasting one. Rather, a plaintiff 'prevails' under the statute *when a court conclusively resolves a claim by granting enduring judicial relief on the merits* that materially alters the legal relationship between the parties.

*Id.* at 203-04.

Here, examination of the relief obtained by Plaintiffs—temporary equitable relief provided by this Court—which was challenged on appeal and vacated by the United States Supreme Court, can only be described as judicially fleeting or ephemeral, *not judicially enduring*.  Indeed, in vacating the Order of this Court, the Supreme Court expressly, and within its discretion, nullified Plaintiffs' relief.  Black's Law Dictionary defines the term "vacate" as "[t]o nullify or cancel; make void; invalidate."  BLACK'S LAW DICTIONARY (12th ed. 2024).  The Supreme Court could have dismissed this case as moot without vacating this Court's judgment but chose not to do so.  Such action by the Court is telling and signals that the Supreme Court did not intend for the relief obtained by Plaintiffs to be enduring.

In quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) in its Order, the remedy provided by the Supreme Court promotes "fairness" by "expung[ing] an adverse decision" that the Board could not get the Court to review.  *Camreta v. Greene*, 563 U.S. 692, 712 & n.10 (2011).  Moreover, the United States Supreme Court specifically taxed the costs against Plaintiffs in its Order, which further supports the determination that Plaintiffs did not prevail on the merits.  Stated otherwise, the United States Supreme Court deliberately nullified the adverse decision of this Court and no adverse judgment was conclusively entered against the Board.  Where, as here, Plaintiffs did not obtain conclusive, judicially sanctioned enduring relief on the merits, Plaintiffs must not be considered prevailing parties.  *Lackey*; *Sole*.

The District Court's reliance on *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979) is misplaced.  There, the defendant refused to provide the plaintiff with a hearing, which the Court determined was a violation of Due Process, and it ordered the defendant to provide plaintiff with a hearing.  On appeal, this Court upheld an award of attorneys' fees to the plaintiff as a prevailing party

because she obtained an injunction from the District Court that required provision of a hearing, even though the provision of the hearing mooted the matter.

In *Bagby*, the relief obtained by the plaintiff was enduring—*i.e.*, it was upheld rather than vacated on appeal and there was no further litigation that would overturn the relief provided. Such enduring relief is not present here. Moreover, unlike in *Bagby*, the Board did not create or originate the challenged action.

Specifically, before any suit was initiated in State or Federal Court, the Board voted to count the undated mail-in ballots at issue. Thus, at the time the action was taken, the Board did violate any act. Further, the Board did not take the action challenged here until it was required to do so by an Order of the Commonwealth Court of Pennsylvania, which expressly directed the Board to take the challenged action by not counting the undated mail-in ballots. As a result, the instant suit lacks a conclusive resolution of a claim by a Court granting enduring judicial relief on the merits. *Lackey*; *Sole*.

**B.    Special circumstances render the award of attorneys' fees unjust.**

The Court's decision to award attorney fees to a prevailing party does not end with a determination as to whether the party received conclusive judicial resolution of its claim that constitutes enduring relief. Thus, if this Court determines that its decision in the underlying case here, which was vacated by the United States Supreme Court, elevates Plaintiffs to the status of prevailing parties, which it should not, this Court must look to the circumstances surrounding the imposition of that relief to determine if an award of attorneys' fees is just. *Newman*.

Here, the Board respectfully submits that the circumstances of the current litigation are special and sufficiently unique to render any award of attorney fees unjust. The Supreme Court has provided little guidance on what circumstances would render a fee award "unjust." *See Ward*

*v. Phila. Parking Auth.*, 634 F. App'x 901, 906 (3d Cir. 2015) ("[T]he Supreme Court has offered little guidance as to what situations qualify."); *see also Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.,* 421 F.3d 417, 422 (6th Cir. 2005) ("[L]ittle guidance has been provided by the Supreme Court as to precisely what constitutes a special circumstance that would defeat a fee award ...."). However, the Fourth Circuit's decision in *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir. 1976) is instructive regarding the types of special considerations this Court should consider in determining whether an award of attorney fees is proper.

In concluding an award of attorney's fees was unjust in a case involving a claim for discrimination under a retirement plan, the Court in *Chastang* weighed the following factors: (i) the action at the time it was taken was not illegal; (ii) the company acted with reasonable dispatch as soon as a murky area of the law was clarified to redress its unintentional violation of the statute; (iii) the company had no pecuniary interest in the action and therefore had no economic incentive to violate the statute; (iv) the company had no right to unilaterally to alter the retirement plan; (v) the company did not originate the discrimination that subsequently became illegal; and (vi) the discrimination was addressed prior to commencement of the suit. In so doing, the Court noted, at most, the company participated in a passive act of discrimination that became illegal because of a change in the law.

Here, all six of the factors considered by the Court in *Chastang*, warrant a denial of attorneys' fees. First, at the time the Board made the decision not to count the ballots (*which was contrary to the Board's original decision, which was to count the ballots*), Pennsylvania law, including the express terms of the Pennsylvania Election Code, as well as two Court Orders, one from the Pennsylvania Supreme Court (*In re Canvass 2020*) and one from the Commonwealth Court (with the Supreme Court declining review of that decision) concerning the exact same issue

required the Board to exclude those ballots from consideration.  Further, the District Court here entered an Order in favor of the Board on summary judgment, and the alleged violation of the statute remained unsettled until this Court's Order, which was later vacated by the United States Supreme Court, with direction that the case be dismissed as moot.

Second, once this Court reversed the District Court's Order, the Board took immediate action consistent with this Court's Order to address the violation of the law as determined by this Court.  Moreover, the Board's decision not to count the ballots here can only be deemed involuntary.  In fact, in the first instance, the Board voted to count the ballots and participated in litigation through a request for discretionary review to the Pennsylvania Supreme Court, seeking to have the ballots counted.  It was only once the Commonwealth Court concluded the ballots would not be counted and the Pennsylvania Supreme Court denied review, that the Board declined to count the ballots.

Third, the County had no pecuniary interest in not counting the ballots or having one candidate win.  As a result, the Board received no benefit, pecuniary or otherwise, from the action challenged in the instant suit.

Fourth, absent the Commonwealth Court's Order requiring exclusion of the ballots and the Pennsylvania Supreme Court's denial of review, the Board would have counted the ballots at issue. Additionally, the published position of the Pennsylvania Department of State specifically directed the Board *not* to count the ballots.  Based on the existence and mandatory nature of the Commonwealth Court's Order and the express directive from the Pennsylvania Department of State, the Board did not possess the unilateral ability to undertake any action to remedy the challenged action.  Indeed, despite the Commonwealth Court's Order and the directives from the Pennsylvania Department of State, the Board only acted in the instant suit because the Attorney

16

General of Pennsylvania refused to take any action to defend its own directives and/or defend Pennsylvania Law once the lawsuit was initiated.  Had the Attorney General's office complied with its legal mandate to defend the statute enacted by the Pennsylvania General Assembly, Lehigh County would not have taken any action in the instant suit.  Further, the only way the Board could take the action requested by Plaintiffs in their suit was to ignore an enforceable Court Order and run the risk of being held in contempt.

Likewise, application of the fifth *Chastang* factor supports a denial of attorney fees.  More particularly, the Board did not create the violation complained of in the lawsuit.  Rather, the Pennsylvania Department of State expressly directed the Board not to count the ballots prior to the election, the Board initially voted to count the votes despite this directive, and it was not until the Commonwealth Court's Order, and the subsequent denial of review of that Order by the Pennsylvania Supreme Court, that the Board voted not to count the ballots at issue.  As such, the Board did not originate the violation; instead, it sought to avoid the challenged action by counting the ballots, and only took the action complained of once it was specifically required to do so by the Commonwealth Court of Pennsylvania.

Lastly, because the Board voted to count the ballots prior to the filing of any suit in State or Federal Court, the Plaintiff's actions in bringing the instant suit lack the causal connection required to award attorney fees to Plaintiffs as prevailing parties.  In other words, because the Board initially voted to count the ballots (and its decision not to count the ballots was mandated by Court Order), it cannot be said that Plaintiffs' actions had the effect of changing the legal relationship, which is necessary for the imposition of attorneys' fees.

Here, like in *Chastang*, at most, the Board participated in a passive violation of statute. The Board's perceived violative actions were required by a Court Order, and only became violative

17

once this Court reversed the District Court's Order. Given the existence of all the factors that support a determination of special circumstances surrounding this matter, the imposition of attorney fees in this matter—against a local government entity—is unjust. *Newman*; *Chastang*.

**C.     Plaintiff's request for attorney fees is unreasonable under Federal Law.**

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988, authorizes district courts to award a reasonable attorney fee to prevailing civil rights litigants. *Hensley*. In enacting the statute, Congress directed that attorney fees be calculated according to standards currently in use under other fee-shifting statutes:

> In actions to enforce federal civil rights, § 1988 authorizes a court, 'in its discretion,' to 'allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.' The legislative history explains that 'a reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.'

*Id.* (internal citations omitted).

A party seeking attorney fees has the burden to prove its request for attorney's fees is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177 (3r. Cir. 1990). To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433.

In a statutory fee case, the party opposing the fee award then has the burden to challenge the reasonableness of the requested fee. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir. 1989). Once the adverse party raises objections to the fee request, the District Court has a great deal of discretion to adjust the fee award considering those objections. *Id.* Section 1988's aim is to enforce the covered civil rights statutes, not to provide "a form of economic relief to improve the financial lot of attorneys." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986).

A lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys. *In re Rite Aid*, 396 F.3d 294 at 305 (3r Cir. 2005). The lodestar method is intended to produce an award that roughly approximates the fee the prevailing attorney would receive if he or she was representing a paying client who was billed by the hour in a comparable case. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010).

When examining the hours claimed by the moving party, the Court should exclude hours that are not reasonably expended. *Id.* Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. *Id.* Further, the court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." *Rode* (quoting *Hensley*, 461 U.S. at 440) (internal citation omitted). The Court may also deduct hours when the fee petition inadequately documents the hours claimed. *Hensley*, 461 U.S. at 433.

In addition, to determine the number of hours reasonably expended in the litigation, the Court must exclude hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Martinez v. Hernando Cty. Sheriff's Office,* 579 F. App'x 710, 714 (11th Cir. 2014).

After determining the number of hours reasonably expended, the Court must examine whether the requested hourly rate is reasonable. *Rode.* As to the billing rate, the general rule is "a reasonable hourly rate is calculated according to the prevailing market rates in the community." *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir.1997) (internal quotation marks and citation omitted). To meet its burden of proof, the fee applicant must "establish by way of satisfactory

evidence, in addition to the attorney's own affidavits, that the requested hourly rates meet this standard." *Washington*, 89 F.3d at 1035 (internal quotation marks, brackets, and citation omitted). The Court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.    *Blum*; *Rode*.

Of significant import here, the court can adjust the lodestar downward if the lodestar is not reasonable considering the result obtained. *Hensley*, 461 U.S. at 434-37. This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims. *Id.* at 436. This adjustment should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar. *Rode*; *Black Grievance Committee v. Philadelphia Electric Co.*, 802 F.2d 648 (3d Cir.1986), *vacated on other grounds*, 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987).

In determining a reasonable rate, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 1996 WL 741885 at *3 (No. Civ. A. 1995-1698, Dec. 10, 1996 E.D. Pa.).

Here, Plaintiffs sought an award of attorney fees totaling $516,136.50 for litigating this matter in Federal Court—which the District Court reduced to $368,336.50—for work performed by four separate attorneys with a combined 106 years of experience. Turning to the specific invoices attached to Plaintiffs' attorneys' fee request regarding the litigation before the District Court, Attorney Stephen Loney, who possesses 19 years of experience, billed, at **an hourly rate of $525**:

- **36.2 hours** analyzing litigation options, drafting a temporary restraining order petition, and discussing the petition with colleagues (for a total of $19,005);
- **12.8 hours** reviewing and revising a stipulation and summary judgment brief and corresponding with opposing counsel;
- **47.8 hours** drafting sections of a summary judgment response and discussing it with colleagues (for a total of $25,095); and
- 12.9 hours drafting a reply brief and discussing it with colleagues.

Next, Attorney Witold Walczak, who has over 35 years of experience, billed, **at an hourly rate of $750**:

- **almost 27 hours editing a brief written by colleagues (for a total of $20,250)**; and
- approximately 15 hours drafting a 20-page, 3-count complaint upon which Plaintiffs only succeeded on one count (which, as set forth below, another of Plaintiff's Co-Counsel billed 17 hours working on also at an hourly rate of $750).

Attorney Marian Schneider, who also has over 35 years of experience, billed, **at an hourly rate of $750**:

- **17 hours** drafting the same 20-page, 3-count complaint upon which Plaintiffs only succeeded on one count (in addition to the 15 hours billed by Attorney Walczak for a total of 32 hours at $750 per hour which totals $24,000);
- 3.5 hours for unspecified legal research and analysis;
- 3.8 hours reviewing a motion for summary judgment;
- 11 hours researching and drafting a section of a brief; and
- **25 hours** reviewing and editing Plaintiffs' brief in opposition to Defendant's motion for summary judgment (for a total of $18,750).

Attorney Richard Ting, who has over 18 years of experience, billed, **at a rate of $475 per hour**:

- **11.4 hours** researching due process and equal protection;
- **14.7 hours** reviewing and revising Plaintiffs' summary judgment brief;
- **19.4 hours** researching and writing a laches response to a laches argument (for a total of $9,215);
- 7.8 hours preparing and reviewing the summary judgment reply brief (which Attorney Loney spent 12.9 hours drafting and discussing at an hourly rate of $525).

In addition, for the litigation before this Court and the U.S. Supreme Court, the specific invoices attached to Plaintiffs' attorney fee request reveal that, Attorney Stephen Loney, who possesses 19 years of experience, billed, at **an hourly rate of $525**:

- **42.7 hours** drafting an opening brief and a reply brief to the Third Circuit Court (for a total of $22,417.50);
- **13.7 hours** preparing for and attending oral argument despite not actually arguing the case before the Court (for a total of $7,192.50);

Next, Attorney Witold Walczak, who has over 35 years of experience, billed **at an hourly rate of $750**:

- **31.15 hours editing a brief written by colleagues (for a total of $23,363)**; and
- **approximately 10 hours** editing an answer to a motion for stay drafted by colleagues (for a total of almost $7,500).

Attorney Marian Schneider, who also has over 35 years of experience, billed, **at an hourly rate of $750**:

- **15.5 hours** editing and drafting the same two briefs drafted and edited by her colleagues for a total of $11,625); and
- **9.0 hours** preparing for, attending, and reviewing the audio of an oral argument in an appeal she did not even argue (for a total of $6,750);

Attorney Richard Ting, who has over 18 years of experience, billed, **at a rate of $475 per hour**:

- **27.1 hours** researching issues for a principal brief and a reply brief drafted by colleagues;

Attorney Adriel I. Cepeda, who has 12 years of experience, billed, **at a rate of $400 per hour**:

- **30.5 hours** drafting and revising the same principal brief and reply brief drafted and revised by colleagues (for a total of $12,200);
- **7.5 hours** participating in preparation for and reviewing an oral argument she did not even attend (for a total of $3,000).

Attorney Ari Savitsky, who has 12 years of experience, **billed a total of 216.5 hours**, **at a**

**rate of $375 per hour**:

- **63 hours** preparing for, traveling to, and attending oral argument (for a total of almost $24,000)
- **107 hours** drafting and revising the same principal brief and reply brief drafted and revised by colleagues and an emergency stay motion (for a total of over $40,000);

Here, the number of hours submitted by Plaintiffs are not reasonable for several reasons. First, the matter required neither a trial nor a single evidentiary hearing; instead, it primarily involved drafting pleadings and briefs. Rather, the facts were stipulated to by the parties, and the presentations consisted solely of legal argument. Next, having four attorneys, all with 17 or more years of experience, 2 of whom have over 35 years of experience working almost exclusively on drafting pleadings and briefs, is excessive, redundant, and otherwise unnecessary. Additionally, the hours submitted show multiple attorneys brainstorming, strategizing, and conferencing internally, resulting in an effective billable rate of $2,500.00 per hour for internal functions.

Further, as detailed above, a review of the itemized hours presented reveals several of Plaintiffs' attorneys were editing the same documents and participating in the same activities, of which an attorney with the stated amount of experience could handle or complete on their own. The number of hours expended on drafting pleadings and briefs is unreasonable and excessive considering the attorneys' years of experience of each attorney.

In addition, a careful review of the billing statements reveals that hours are submitted in which multiple attorneys reviewed the same documents drafted by other parties, "conferred," "corresponded," "planned," and "conferenced" resulting in an effective billable rate of over $3,600 per hour for internal functions. Considering the combined 140 years of experience, there is no reasonable justification as to why four seasoned civil rights and election law attorneys were needed to brief and argue the single issue upon which Appellants prevailed—which was previously raised

and briefed in part in the associated state court litigation in *Ritter*—nor were the hours expended necessary for the development of the legal work produced.

Further, Plaintiffs' Counsel's invoices reveal that Plaintiff's Counsel engaged, to some extent, in "block billing." "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking*, LLC, 476 F. App'x 198, 203 (11th Cir. 2012). As the Eleventh Circuit recognized, such block billing results in an imprecision in an attorneys' records. Id. at 203.

In addition, upon review of the procedural history and the determinations made by the Federal Courts in this litigation, the Board respectfully submits any determination of the lodestar amount should be adjusted to zero or, at best, a nominal amount. Specifically, the District Court ruled in favor of the Board on summary judgment, and while the Third Circuit reversed that determination on one count of Appellants' three-count complaint, the United States Supreme Court nullified that decision by electing to vacate the judgment. The action of the United States Supreme Court, which included the taxing costs against Appellants, signals the Court's intent that Appellants did not prevail on the single legal claim upon which they received temporarily relief before the Third Circuit. In addition to the fact the Supreme Court vacated the only relief Appellants obtained, and the fact Appellants ultimately were *not successful on a single legal claim* by virtue of the United Supreme Court's Order, this Court should exercise its discretion to reduce the reasonable hours to zero or, at most, a nominal amount. Based on the foregoing, any lodestar calculation should be adjusted downward on a general reduction to zero, or, at best to a nominal amount. Therefore, the Court should significantly reduce the requested fees or limit the fees to a

nominal award, particularly considering the narrow relief Plaintiffs ultimately obtained here, which consisted of ephemeral success on a single count of their three-count complaint.

In light of the years of experience, there is no reasonable justification that four attorneys were needed to develop the single issue presented to the Court, nor were the hours expended necessary for the development of the legal work produced. Coupled with the fact that United States Supreme Court vacated the only relief obtained, and Plaintiffs were not ultimately successful on a single legal claim, this Court should exercise its discretion to reduce the reasonable hours to zero or, at most, a nominal amount.

Moreover, as to the billing rates, seven (7) attorneys are billing at $375 per hour or more, with two attorneys seeking $750 per hour each and one seeking $525 per hour. While Plaintiffs attempted to justify their rates based on the Philadelphia geographical area and its associated statistics, the use of such data is improper. As this Court is aware, Allentown, Pennsylvania, in which this suit was filed and litigated, is not within the geographical area of the community of Philadelphia as it relates to the market rate for legal fees.

To that end, the reasonable hourly rate is calculated according to the prevailing market rates *in the relevant community. Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984)). In general, the relevant community market rate is the market rate of the "vicinage of the litigation." *Interfaith Community. Organization v. Honeywell Int'l Inc.*, 426 F.3d 694, 699; *see Beattie v. Line Mountain School Dist.*, No. 13-cv-2655, 2014 WL 3400975 at *9 (M.D. Pa. July 10, 2024) (holding that, under the vicinage of litigation standard, forum rate rule applies to individual vintages within Middle District of Pennsylvania and declining to adopt one rate for entire district); *see also Maldonado v. Houstoun*, 256 F.3d 181, 187-188 (3d Cir. 2001); *Rainey v. Philadelphia Housing Authority*, 832

F. Supp. 127, 129 (E.D. Pa. 1993) (applying Philadelphia market rates for litigation filed and litigated in the Eastern District of Pennsylvania-Philadelphia).

Contrary to Plaintiffs' assertions below, the Eastern District of Pennsylvania does not serve the entire state of Pennsylvania.  Further, the Eastern District of Pennsylvania has vicinages in Allentown, Reading, Easton, and Philadelphia, and each vicinage is over an hour-and-a-half from Philadelphia and contain different legal markets with different attorney rates.  Eastern District of Pennsylvania Local Rule 40.1§II specifically states that if plaintiff or defendant resides in or the cause of action occurred in a specific set of counties the case will be assigned to the Reading, Allentown, or Easton vicinages. Thus, a clear procedure for assignment of cases exists and the Court makes clear geographical distinctions when assigning cases to specific vicinages.  As such, the market rate for the Allentown vicinage applies.  Indeed, this Honorable Court in <u>Interfaith Community</u>, 426 F.3d at704-05, held that the "forum rate"—that is the reasonable hourly rate where litigation occurs and not the rate where counsel practices—applies unless the prevailing party can meet one of the exceptions.

Here, Plaintiffs did not set forth any evidence concerning the "forum rate" for the vicinage of Allentown.  Instead, they relied solely on market rates for the Philadelphia vicinage.  Therefore, Plaintiffs—who bore the burden of proof on their motion for attorney fees—did not satisfy their burden of proving the reasonableness of their attorney rates as required to prevail on their fee petition.  Additionally, Plaintiffs did not argue that they met one of the exceptions below and should, therefore, be foreclosed from raising such argument for the first time on appeal to the extent they may attempt to do so.

As a final point, Plaintiffs sought an additional $18,610 purportedly incurred for litigating their fee petition.  As the District Court properly recognized, despite seeking this additional award,

Plaintiff provide no accompanying invoices to justify the hours expended, thereby depriving the Board of its ability to thoroughly respond to the request for additional fees.  Therefore, Plaintiffs are entitled to no recovery for this portion of their fee claim.

For these reasons and the reasons set forth more fully below, the Board respectfully submits the attorneys' fee award sought by Plaintiffs is unreasonable and equitably unjustifiable.

**CONCLUSION**

Upon review of the stipulated facts of this matter, as well as, the law, the Board respectfully requests this Honorable Court enter an Order reversing the District Courts' decisions and denying Plaintiffs' request for Attorneys' Fees pursuant to Section 1988.

Respectfully Submitted,

Repka Mazin LLC

Date:   November 12, 2025                    By:   *Joshua S. Mazin*

Joshua S. Mazin
Pa. I.D. 87680
Lucas J. Repka
Pa. I.D. No. 93509
108 East Center Street
Nazareth, Pennsylvania 18064
Phone : (610) 365-2670
Email: josh@repkamazinlaw.com
          Lucas@repkamazinlaw.com
*Counsel for Lehigh County Board of Elections,Defendant/Appellant/Cross-Appellee*

**CERTIFICATIONS**

The undersigned counsel represents to this Court that he is a member of the bar of this Court pursuant to L.A.R. 46.1.

The undersigned counsel also represents that this Brief complies with the word limit of Fed. A. App. P. 32(a)(7(B)(i), as this document contains 8,083 words.

The undersigned counsel also represents that a virus detection program was run on the file and no virus was detected.

In addition, the undersigned counsel represents the text of this Brief is identical to the text in paper copies that will be filed with the Court.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Brief has been served on all counsel of record using the

Court's CM/ECF system.


REPKA MAZIN, LLC


By: *Lucas J. Repka*

Lucas J. Repka, Esq.
Pa. ID. No. 93509
108 East Center Street
Nazareth, Pennsylvania 18064
Phone: (610) 365-2670


DATED: November 12, 2025