**No. 22 – 1499**
**25 – 2650**
**25 – 2761**

# In the United States Court of Appeals for the Third Circuit

LINDA MIGLIORI, et al.,

Plaintiffs-Appellees/Cross-Appellants,

v.

LEHIGH COUNTY BOARD OF ELECTIONS, et al.,

Defendants-Appellants/Cross-Appellees.

On Appeal from the Eastern District of Pennsylvania
(D.C. Civ. Action No. 5:22-CV-00397)
District Judges: The Honorable Joseph F. Lesson, Jr. and The Honorable Jeffrey L. Schmel

Third Step Brief filed on behalf of Lehigh County Board of Elections, Appellant/Cross-Appellee

Joshua S. Mazin
Lucas J. Repka
REPKA MAZIN, LLC
3735 Nazareth Rd, Suite 204
Easton, Pennsylvania 18045
Phone: 610.365.2670
Fax: 610.365.2672
josh@repkamazinlaw.com
lucas@repkamazinlaw.com

Counsel for Appellant/Cross-Appellee, Lehigh County Board of Elections

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................................ii

ARGUMENT.........................................................................................1

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979)……………………………………………….……3

*Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir. 1989)………………….……..8

*Brandon v. Guilford County Board of Elections*, 921 F.3d 194 (4th Cir. 2019)…………….…..7

*Camreta v. Greene*, 563 U.S. 692, 712 & n.10 (2011)……………………………………….……2

*Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking*, LLC,
476 F. App'x 198, 203 (11th Cir. 2012)……………………………………………….……12

*Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir. 1976)………………………..4,5,6,7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)……………………………………………….…8

*Interfaith Community. Organization v. Honeywell Int'l Inc.*, 426 F.3d 694, 699………….…..14

*In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*,
241 A.3d 1058 (Pa. 2020)………………………………………………………………….…...5

*Lackey v. Stinnie*, 604 U.S. 192 (2025)……………………………………….…....1,2,3,4

*Martinez v. Hernando Cty. Sheriff's Office,* 579 F. App'x 710, 714 (11th Cir. 2014)…………8

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)……………………………………....8

*Rode v. Dellarciprete*, 892 F.2d 1177 (3r. Cir. 1990)……………………………………….8

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)…………………………………….....2

*U.S. ex rel. Palmer v. C&D Technologies, Inc.*, 897 F.3d 128, 137 (3d Cir. 2018)………….…8

## FEDERAL STATUTES

42 U.S.C. §1988…………………………………………………………………………………1

## ARGUMENT

First and foremost, contrary to Plaintiff's assertions, they are not prevailing parties. More particularly, Plaintiffs did not obtain judicially sanctioned enduring relief in accordance with the U.S. Supreme Court's most recent pronouncement of the law in this area. Further, the case law repeatedly relied on by Plaintiffs is distinguishable.

Moreover, even if they were prevailing parties—which they are not—the facts of the underlying case—most notably, that the Board was subject to competing injunctions, to, on the one hand, *not* count the ballots by Pennsylvania's State Courts and, on the other hand, to count the ballots by this Court in an Opinion that involved case of first impression, which the United Supreme Court later vacated—constitute special circumstances that bar recovery of attorney fees.

Lastly, even if an award were appropriate—which it is not—as the District Court recognized in part, the fees sought here are unreasonable. A careful examination of the bills submitted by Plaintiffs—the parties that bore the burden of proving their fee request was reasonable—which they did not–reveals that a further, significant reduction of the fees awarded to Plaintiffs to a nominal amount is warranted.

A.     **Plaintiffs fail to meaningfully explain how they are prevailing parties entitled to an award of attorney fees in light of the U.S. Supreme Court's most recent pronouncements of what is required to obtain "prevailing party" status.**

At the outset, Plaintiffs fail to meaningfully address the U.S. Supreme Court's most recent pronouncements on what constitutes "prevailing party" status. *See Lackey v. Stinnie*, 604 U.S. 192 (2025). In *Lackey*, the U.S. Supreme Court held, where, as here, a party obtains a preliminary injunction, *and the case becomes moot before the Court reaches a final judgment*, that party is not a prevailing party under Section 1988. The Court in *Lackey* explained that a plaintiff prevails "*when a court conclusively resolves a claim by granting enduring judicial relief on the merits that*

*materially alters the legal relationship between the parties*." *Id.* at 203-04 (emphasis added). The Court determined that a plaintiff who receives a preliminary injunction before a case becomes moot does not fit the bill. In so doing, the Court explained (with emphasis added):

> Today, *we establish that the enduring nature of that change must itself be judicially sanctioned*. A plaintiff who wins a transient victory on a preliminary injunction does not become a 'prevailing party' simply because external events convert the transient victory into a lasting one. Rather, a plaintiff 'prevails' under the statute *when a court conclusively resolves a claim by granting enduring judicial relief on the merits* that materially alters the legal relationship between the parties.

*Id.* at 203-04.

Here, an examination of the relief obtained by Plaintiffs—temporary equitable relief provided by this Court—which was challenged on appeal and vacated by the United States Supreme Court, can only be described as ephemeral, *rather than enduring relief that was judicially sanctioned*. Indeed, in vacating the Order of this Court, the Supreme Court expressly, and within its discretion, nullified Plaintiffs' relief. Black's Law Dictionary defines the term "vacate" as "[t]o nullify or cancel; make void; invalidate." BLACK'S LAW DICTIONARY (12th ed. 2024). The Supreme Court could have dismissed this case as moot without vacating this Court's judgment, but it chose not to do so. This action by the Supreme Court signifies the Court did not intend for the relief obtained by Plaintiffs to be *judicially sanctioned as enduring* as recently enunciated by that Court in *Lackey*.

In quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) in its Order, the remedy provided by the Supreme Court promotes "fairness" by "expung[ing] an adverse decision" that the Board could not get the Court to review. *Camreta v. Greene*, 563 U.S. 692, 712 & n.10 (2011). Moreover, the United States Supreme Court specifically taxed the costs against Plaintiffs in its Order, which further supports the determination that Plaintiffs did not prevail on the merits.

Stated otherwise, the United States Supreme Court deliberately nullified the adverse decision of this Court, and no adverse judgment was conclusively entered against the Board. Where, as here, Plaintiffs did not obtain conclusive, judicially sanctioned enduring relief on the merits, Plaintiffs cannot be deemed prevailing parties. *Lackey*; *Sole*.

In their Brief to this Court, Plaintiffs offer no persuasive explanation as to why *Lackey* is not controlling, or how they satisfy that most recent pronouncement of what is required for prevailing party status by the Supreme Court. While Plaintiffs assert they obtained a "final order" of this Court, they do not explain how the express vacatur of that order squares with the U.S. Supreme Court's requirement in *Lackey*, that the relief obtained be *judicially sanctioned as enduring*. Nor can they.

Further, *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979), continually relied on by Plaintiffs, does not compel the result Plaintiffs seek here. In *Bagby*, the defendant refused to provide the plaintiff a hearing, which the Court determined violated due process, ordering the defendant to provide plaintiff a hearing. On appeal, this Court upheld an award of attorney fees to the plaintiff as a prevailing party because she obtained an injunction that required a hearing, even though the actual provision of the hearing mooted the case.

*Bagby* is inapposite. Specifically, in *Bagby*, the relief obtained by the plaintiff was judicially enduring as it was not vacated on appeal as in the instant case. Such enduring *judicial* relief is not present here. Further, as explained more fully below, unlike the defendant in *Bagby*, the Board did not create or originate the challenged action; rather, it merely defended a position it was mandated to take when the Pennsylvania Supreme Court declined to review the Commonwealth Court's decision that ordered the Board *not* to count the votes at issue.

3

In short, the instant case is not one in which Plaintiffs obtained a conclusive resolution of their claim by a Court granting enduring judicial relief on the merits. *Lackey*; *Sole*.

**B.**    **Special circumstances render the award of attorneys' fees unjust.**

The Court's decision to award attorney fees to a prevailing party does not end with a determination of whether the party received conclusive judicially sanctioned resolution of its claim that constitutes enduring relief. Thus, if this Court determines that its decision in the underlying case here, which was vacated by the United States Supreme Court, elevates Plaintiffs to the status of prevailing parties—which it should not—this Court must look to the circumstances surrounding the imposition of that relief to determine if an award of attorneys' fees is just. *Newman*.

Here, the Board respectfully submits that the circumstances of the current litigation are special and sufficiently unique to render any award of attorney fees unjust. The Fourth Circuit's decision in *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir. 1976) is instructive regarding the types of special considerations to be considered in determining whether an award of attorney fees is proper.

In concluding an award of attorney's fees was unjust in a case involving a claim for discrimination under a retirement plan, the Court in *Chastang* weighed the following factors: (i) the action at the time it was taken was not illegal; (ii) the company acted with reasonable dispatch as soon as a murky area of the law was clarified to redress its unintentional violation of the statute; (iii) the company had no pecuniary interest in the action and therefore had no economic incentive to violate the statute; (iv) the company had no right to unilaterally to alter the retirement plan; (v) the company did not originate the discrimination that subsequently became illegal; and (vi) the discrimination was addressed prior to commencement of the suit. In so doing, the Court noted, at

most, the company participated in a passive act of discrimination that became illegal because of a change in the law.

Here, all six of the factors considered by the Court in *Chastang*, warrant a denial of attorney fees. First, at the time the Board made the decision not to count the ballots (*which was contrary to the Board's original decision to count the ballots*), Pennsylvania law, including the express terms of the Pennsylvania Election Code, as well as two Court Orders, one from the Pennsylvania Supreme Court (*In re Canvass 2020*) and one from the Commonwealth Court (with the Supreme Court declining review of that decision) concerning the exact same issue required the Board to exclude the ballots from consideration. Further, after Plaintiffs sued the Board, the District Court here entered an Order in favor of the Board on summary judgment, and the alleged violation of the statute—***which involved an issue of first impression***—remained unsettled until this Court's Order, an Order that was later vacated by the United States Supreme Court, with direction that the case be dismissed as moot.

Second, once this Court reversed the District Court's Order, the Board took immediate action consistent with this Court's Order to address the violation of the law as determined by this Court. Moreover, the Board's decision not to count the ballots here can only be deemed involuntary. In fact, in the first instance, the Board voted to count the ballots and participated in litigation through a request for discretionary review to the Pennsylvania Supreme Court, seeking to have the ballots counted. It was only once the Commonwealth Court concluded the ballots would not be counted and the Pennsylvania Supreme Court denied review, that the Board declined to count the ballots. The Board had no choice at that point other than to risk being held in contempt of Court.

Third, the County had no pecuniary interest in not counting the ballots or having one candidate win. As a result, the Board received no benefit, pecuniary or otherwise, from the action challenged in the instant suit.

Fourth, absent the Commonwealth Court's Order requiring exclusion of the ballots and the Pennsylvania Supreme Court's denial of review, the Board would have counted the ballots at issue. Additionally, the published position of the Pennsylvania Department of State specifically directed the Board *not* to count the ballots. Based on the existence and mandatory nature of the Commonwealth Court's Order and the express directive from the Pennsylvania Department of State, the Board did not possess unilateral ability to undertake any action to remedy the challenged action.

Indeed, despite the Commonwealth Court's Order and the directives from the Pennsylvania Department of State, the Board only acted in the instant suit because the Attorney General of Pennsylvania refused to take any action to defend its own directives and/or defend Pennsylvania law once suit was initiated. Had the Attorney General's office complied with its legal mandate to defend the statute enacted by the Pennsylvania General Assembly, Lehigh County would not have taken any action in the instant suit. Further, the only way the Board could take the action requested by Plaintiffs in their suit was to ignore an enforceable Court Order and run the risk of being held in contempt.

Likewise, application of the fifth *Chastang* factor supports a denial of attorney fees. More particularly, the Board did not create the violation complained of in the suit. Rather, the Pennsylvania Department of State expressly directed the Board not to count the ballots prior to the election, the Board initially voted to count the votes despite this directive, and it was not until the Commonwealth Court's Order, and the subsequent denial of review of that Order by the

Pennsylvania Supreme Court, that the Board voted not to count the ballots at issue. As such, the Board did not originate the violation; instead, it sought to avoid the challenged action by counting the ballots, and it only took the action complained of once it was specifically required to do so by the Commonwealth Court of Pennsylvania.

Lastly, because the Board voted to count the ballots prior to the filing of any suit in State or Federal Court, the Plaintiffs' actions in bringing the instant suit lack the causal connection required to award attorney fees to Plaintiffs as prevailing parties. In other words, because the Board initially voted to count the ballots (and its decision not to count the ballots was mandated by Court Order), it cannot be said that Plaintiffs' actions had the effect of changing the legal relationship, which is necessary for the imposition of attorneys' fees.

Here, the Board's alleged violative actions were required by a Court Order, and only became violative once this Court reversed the District Court's Order in what involved review of an issue of first impression. Given the existence of all the factors that support a determination of special circumstances surrounding this matter, the imposition of attorney fees in this matter— against a local government entity—is unjust. *Newman*; *Chastang*.

As a final point, Plaintiff's reliance on *Brandon v. Guilford County Board of Elections*, 921 F.3d 194 (4th Cir. 2019), is misplaced. *Brandon* did not involve the special circumstances at issue here, in which a county board was subject to mandatory competing injunctions by state and federal courts as described in detail above. Further, unlike the plaintiffs in *Brandon*, who obtained *permanent* injunctive relief regarding the constitutionality of redistricting legislation, Plaintiffs here did not obtain judicially sanctioned enduring and conclusive relief; rather, the relief they obtained was nullified by the United States Supreme Court. Despite their reliance on *Brandon*, Plaintiffs offer no explanation for these marked distinctions.

### C.    Plaintiff's request for attorney fees—which the District Court reduced in part—is unreasonable under Federal Law, warranting a further reduction in the fees awarded to a nominal sum.

It is axiomatic that a party seeking attorney fees has the burden to prove its request for attorney fees is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177 (3r. Cir. 1990). To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). When an adverse party raises objections to a fee request, the District Court has a great deal of discretion to adjust the fee award considering those objections. *Bell v. United Princeton Props., Inc.*, 884 F.2d 713 (3d Cir. 1989).

As this Court explains, "[o]ur case law provides district courts with substantial discretion to determine what constitutes reasonable attorneys' fees because they are 'better informed than an appellate court about the underlying litigation and an award of attorney fees is fact specific[.]'" *U.S. ex rel. Palmer v. C&D Tech., Inc.*, 897 F.3d 128, 137 (3d Cir. 2018) (quoting *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1184 (3d Cir. 1995)).

In their Brief, Plaintiffs repeatedly ignore these well-settled legal principles in an improper attempt to shift the burden of proof to the Board. This Court should not countenance Plaintiffs newly raised burden-shifting approach.

Further, when examining the hours claimed by the moving party, the Court should exclude hours that are not reasonably expended, as the District Court did in part here. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010). Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. *Id.* The Court may also deduct hours when the fee petition inadequately documents the hours claimed. *Hensley*, 461 U.S. at 433.

In addition, to determine the number of hours reasonably expended in the litigation, the Court must exclude hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Martinez v. Hernando Cty. Sheriff's Office,* 579 F. App'x 710, 714 (11th Cir. 2014).

Here, Plaintiffs sought an award of attorney fees totaling $516,136.50 for litigating this matter in Federal Court—which the District Court reduced to $368,336.50—for work performed by four separate attorneys with a combined 106 years of experience.  Turning to the specific invoices attached to Plaintiffs' attorneys' fee request regarding the litigation before the District Court, Attorney Stephen Loney, who possesses 19 years of experience, billed, at **an hourly rate of $525**:

- **36.2 hours** analyzing litigation options, drafting a temporary restraining order petition, and discussing the petition with colleagues (for a total of $19,005);
- **12.8 hours** reviewing and revising a stipulation and summary judgment brief and corresponding with opposing counsel;
- **47.8 hours** drafting sections of a summary judgment response and discussing it with colleagues (for a total of $25,095); and
- 12.9 hours drafting a reply brief and discussing it with colleagues.

Next, Attorney Witold Walczak, who has over 35 years of experience, billed **at an hourly rate of $750**:

- **almost 27 hours editing a brief written by colleagues (for a total of $20,250)**; and
- approximately 15 hours drafting a 20-page, 3-count complaint upon which Plaintiffs only succeeded on one count (which, as set forth below, another of Plaintiff's Co-Counsel billed 17 hours working on also at an hourly rate of $750, for a total of 32 hours by attorneys charging an effective rate of $1,500).

Attorney Marian Schneider, who also has over 35 years of experience, billed, **at an hourly rate of $750**:

- **17 hours** drafting the same 20-page, 3-count complaint upon which Plaintiffs only succeeded on one count (in addition to the 15 hours billed by Attorney Walczak for a total of 32 hours at $750 per hour which totals $24,000, which begs the question— why does an attorney worth $750 per hour need another attorney worth $750 hour to spend more time drafting a complaint than the first attorney at $750 per hour?);
- 3.5 hours for unspecified legal research and analysis;
- 3.8 hours reviewing a motion for summary judgment;
- 11 hours researching and drafting a section of a brief; and

- **25 hours** reviewing and editing Plaintiffs' brief in opposition to Defendant's motion for summary judgment (for a total of $18,750).

Attorney Richard Ting, who has over 18 years of experience, billed, **at a rate of $475 per hour**:

- **11.4 hours** researching due process and equal protection;
- **14.7 hours** reviewing and revising Plaintiffs' summary judgment brief;
- **19.4 hours** researching and writing a laches response to a laches argument (for a total of $9,215);
- 7.8 hours preparing and reviewing the summary judgment reply brief (which Attorney Loney spent 12.9 hours drafting and discussing at an hourly rate of $525).

In addition, for the litigation before this Court and the U.S. Supreme Court, the specific invoices attached to Plaintiffs' attorney fee request reveal that, Attorney Stephen Loney, who possesses 19 years of experience, billed, at **an hourly rate of $525**:

- **42.7 hours** drafting an opening brief and a reply brief to the Third Circuit Court (for a total of $22,417.50);
- **13.7 hours** preparing for and attending oral argument despite not actually arguing the case before the Court (for a total of $7,192.50);

Next, Attorney Witold Walczak, who has over 35 years of experience, billed, **at an hourly rate of $750**:

- **31.15 hours editing a brief written by colleagues (for a total of $23,363)**; and
- **approximately 10 hours** editing an answer to a motion for stay drafted by colleagues (for a total of almost $7,500).

Attorney Marian Schneider, who also has over 35 years of experience, billed, **at an hourly rate of $750**:

- **15.5 hours** editing and drafting the same two briefs drafted and edited by her colleagues for a total of $11,625); and
- **9.0 hours** preparing for, attending, and reviewing the audio of an oral argument in an appeal she did not even argue (for a total of $6,750);

Attorney Richard Ting, who has over 18 years of experience, billed, **at a rate of $475 per hour**:

- **27.1 hours** researching issues for a principal brief and a reply brief drafted by colleagues;

Attorney Adriel I. Cepeda, who has 12 years of experience, billed, **at a rate of $400 per hour**:

- **30.5 hours** drafting and revising the same principal brief and reply brief drafted and revised by colleagues (for a total of $12,200);
- **7.5 hours** participating in preparation for and reviewing an oral argument she did not even attend (for a total of $3,000).

Attorney Ari Savitsky, who has 12 years of experience, **billed a total of 216.5 hours**, **at a rate of $375 per hour**:

- **63 hours** preparing for, traveling to, and attending oral argument (for a total of almost $24,000)
- **107 hours** drafting and revising the same principal brief and reply brief drafted and revised by colleagues and an emergency stay motion (for a total of over $40,000);

The number of hours submitted by Plaintiffs here are not reasonable for several reasons. First, the matter required neither a trial nor a single evidentiary hearing; instead, it primarily involved drafting pleadings and briefs. Rather, the facts were stipulated to by the parties, and the presentations consisted solely of legal argument. Next, having four attorneys, all with 17 or more years of experience, 2 of whom have over 35 years of experience working almost exclusively on drafting pleadings and briefs, is excessive, redundant, and otherwise unnecessary. Additionally, the hours submitted show multiple attorneys brainstorming, strategizing, and conferencing internally, resulting in an effective billable rate of $2,500.00 per hour for internal functions.

Further, as detailed above, a review of the itemized hours presented reveals several of Plaintiffs' attorneys were editing the same documents and participating in the same activities, of which an attorney with the stated amount of experience could handle or complete on their own.

The number of hours expended on drafting pleadings and briefs is unreasonable and excessive considering the attorneys' years of experience of each attorney.

In addition, a careful review of the billing statements reveals that hours are submitted in which multiple attorneys reviewed the same documents drafted by other parties, "conferred," "corresponded," "planned," and "conferenced" resulting in an effective billable rate of over $3,600 per hour for internal functions. Considering the combined 140 years of experience, there is no reasonable justification as to why four seasoned civil rights and election law attorneys were needed to brief and argue the single issue upon which Appellants prevailed—which was previously raised and briefed in part in the associated state court litigation in *Ritter*—nor were the hours expended necessary for the development of the legal work produced.

Plaintiffs' Counsel's invoices also reveal that Plaintiff's Counsel engaged, to some extent, in "block billing." "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking*, LLC, 476 F. App'x 198, 203 (11th Cir. 2012). As the Eleventh Circuit recognized, such block billing results in an imprecision in an attorneys' records. Id. at 203. Through their Brief, Plaintiffs offer no response to this assertion.

In addition, upon review of the procedural history and the determinations made by the Federal Courts in this litigation, the Board respectfully submits any determination of the lodestar amount should be adjusted to zero or, at best, a nominal amount. Specifically, the District Court ruled in favor of the Board on summary judgment, and while the Third Circuit reversed that determination on one count of Appellants' three-count complaint, the United States Supreme Court nullified that decision by electing to vacate the judgment. The action of the United States Supreme Court, which included the taxing costs against Appellants, signals the Court's intent that

Appellants did not prevail on the single legal claim upon which they received temporarily relief before the Third Circuit. In addition to the fact the Supreme Court vacated the only relief Appellants obtained, and the fact Appellants ultimately were *not successful on a single legal claim* by virtue of the United Supreme Court's Order, this Court should exercise its discretion to reduce the reasonable hours to zero or, at most, a nominal amount. Based on the foregoing, any lodestar calculation should be adjusted downward on a general reduction to zero, or, at best to a nominal amount. Therefore, the Court should significantly reduce the requested fees or limit the fees to a nominal award, particularly considering the narrow relief Plaintiffs ultimately obtained here, which consisted of ephemeral success on a single count of their three-count complaint. In that respect, the Board requests a further downward departure of the fees sought by Plaintiffs.

In light of the years of experience, there is no reasonable justification that four attorneys were needed to develop the single issue presented to the Court, nor were the hours expended necessary for the development of the legal work produced. Coupled with the fact that United States Supreme Court vacated the only relief obtained, and Plaintiffs were not ultimately successful on a single legal claim, this Court should exercise its discretion to reduce the reasonable hours to zero or, at most, a nominal amount.

Moreover, as to the billing rates, seven (7) attorneys are billing at $375 per hour or more, with two attorneys seeking $750 per hour each and one seeking $525 per hour. While Plaintiffs attempted to justify their rates based on the Philadelphia geographical area and its associated statistics, the use of such data is improper. As this Court is aware, Allentown, Pennsylvania, in which this suit was filed and litigated, is not within the geographical area of the community of Philadelphia as it relates to the market rate for legal fees.

As recognized by the District Court below, contrary to Plaintiffs' assertions, the Eastern District of Pennsylvania does not serve the entire state of Pennsylvania. Further, the Eastern District of Pennsylvania has vicinages in Allentown, Reading, Easton, and Philadelphia, and each vicinage is over an hour-and-a-half from Philadelphia and contain different legal markets with different attorney rates. Eastern District of Pennsylvania Local Rule 40.1§II specifically states that if plaintiff or defendant resides in or the cause of action occurred in a specific set of counties the case will be assigned to the Reading, Allentown, or Easton vicinages. Thus, a procedure for assignment of cases exists and the Court makes clear geographical distinctions when assigning cases to specific vicinages. As such, the market rate for the Allentown vicinage applies. Indeed, this Honorable Court in *Interfaith Cmty. Org. v. Honeywell Int'l*, 426 F.3d 694, 704-05 (3d Cir. 2005), held the "forum rate"—that is the reasonable hourly rate where litigation occurs and not the rate where counsel practices—applies unless the prevailing party can meet one of the exceptions.

Here, Plaintiffs did not set forth any evidence concerning the "forum rate" for the vicinage of Allentown. Instead, they relied solely on market rates for the Philadelphia vicinage. Therefore, Plaintiffs—who bore the burden of proof on their motion for attorney fees—did not satisfy their burden of proving the reasonableness of their attorney rates as required to prevail on their fee petition.

While Plaintiffs now attempt to argue that the Board's challenge to its fee request for the Third Circuit litigation was untimely, this argument should be deemed waived as it was not raised at any time below. And, even if this issue was properly preserved—which it was not—the Board made the requisite submission, the submission was expressly considered by the District Court, and Plaintiffs suffered no prejudice because of the timing of the Board's submission. To now hold that the Board's submission should not be considered as untimely after the District Court below

expressly considered and addressed the Board's assertions on this point when Plaintiffs raised no such issue below is absurd.

As a final point, Plaintiffs sought an additional $18,610 purportedly incurred for litigating their fee petition. As the District Court properly recognized, despite seeking this additional award, Plaintiff provide no accompanying invoices to justify the hours expended, thereby depriving the Board of its ability to thoroughly respond to the request for additional fees. Therefore, Plaintiffs are entitled to no recovery for this portion of their fee claim. Plaintiffs' assertions that they were not required to provide bills to the District Court to support their request is contrary to settled law discussed above.

For these reasons, the Board respectfully submits the attorneys' fee award sought by Plaintiffs is unreasonable and equitably unjustifiable.

Respectfully Submitted,

Repka Mazin LLC

Date:   February 10, 2026                    By:   *Joshua S. Mazin*

Joshua S. Mazin
Pa. I.D. 87680
Lucas J. Repka
Pa. I.D. No. 93509
3735 Nazareth Rd., Suite 204
Easton, Pennsylvania 18045
Phone: (610) 365-2670
Email: josh@repkamazinlaw.com
            Lucas@repkamazinlaw.com
*Counsel for Lehigh County Board of*
*Elections,        Defendant/Appellant/Cross-*
*Appellee*

## CERTIFICATIONS

The undersigned counsel represents to this Court that he is a member of the bar of this Court pursuant to L.A.R. 46.1.

The undersigned counsel also represents that this Brief complies with the word limit of Fed. A. App. P. 32(a)(7(B)(i), as this document contains 8,083 words.

The undersigned counsel also represents that a virus detection program was run on the file and no virus was detected.

In addition, the undersigned counsel represents the text of this Brief is identical to the text in paper copies that will be filed with the Court.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Brief has been served on all counsel of record using the Court's CM/ECF system.

REPKA MAZIN, LLC

By: *Lucas J. Repka*

Lucas J. Repka, Esq.

DATED: <u>February 10, 2026</u>